This case raises issues that arise when an employee has two jobs. Although there does not appear to be any direct precedent in the decisions of the appellate courts in North Carolina, the Full Commission itself has considered this issue in a number of cases (for example, I.C. No. 431525, Welch vs. Alex Lee/Lowe's, filed February 26, 1999, and I.C. No. 569750, Haire vs. Norwest Corporation, filed April 7, 1999) and Larson has also considered it.
The situation is best described in Haire:
 "At the time of injury, plaintiff worked in two separate jobs. It is clear from the prevailing law (and is not an issue herein) that plaintiff's average weekly wage should be determined from the employment of his injury. N.C. Gen. Stat. § 97-2(5); Barnhardt v. Cab. Co., 266 N.C. 419 (1966); McAninch v. Buncombe County Schools, 347 N.C. 126, 489 S.E.2d 375 (1997). Plaintiff was able in the instant case to return to work within a short period of time in his part-time employment, but was totally disabled from work in his job of injury. The issue presented herein is whether the defendant, who is allowed by law to disregard plaintiff's pre-injury wages at his second or concurrent job for purposes of computing average weekly wage, can receive a credit for those same `disregarded' wages when calculating defendant's obligation to pay temporary partial disability. This issue does not appear to have been specifically addressed by our appellate courts. In the Interlocutory Opinion and Award by the Full Commission in the instant case, this panel adopted the analysis of the Full Commission in Karen McGuire v. Mid Atlantic Marketing, Incorporated, I.C. File Number 457082 (May, 1996) which determined that in computing "partial disability", plaintiff's average weekly wage in the employment of injury and the second job must be considered. Although this Full Commission panel agrees that in computing partial disability, wages from both of his employments should be considered, it appears that the Larson's preferred rule used by the deputy commissioner herein should be followed. Accordingly, since North Carolina does not allow aggregation of wages from concurrent employment to determine the compensation rate, wages earned from concurrent employment will be disregarded in determining the extent of disability. However, if the concurrent employment were enlarged or resorted to as a substitute for loss of earning from the employment where the employee was hurt, then the additional wages would be considered. 2 Larson, Workers' Compensation Law 60.31(g).
 ***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Young and the briefs and arguments before the Full Commission. The appealing parties have not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award, with a few exceptions. The Full Commission therefore affirms the Opinion and Award of the Deputy Commissioner with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer at all relevant times herein.
3. Travelers was the carrier on risk at all relevant times herein.
4. Plaintiff's average weekly wage was $498.11, yielding a compensation rate of $332.24.
5. Plaintiff's medical records from Union Regional Medical Center, Carolina Bone and Joint, and Presbyterian Hospital-Matthews shall be admitted into evidence.
6. The issues presented are:
 a) Whether plaintiff sustained a compensable injury by accident arising out of the course of his employment with the defendant-employer on August 3, 1999.
 b) Whether plaintiff is entitled to any benefits under the North Carolina Workers' Compensation Act
 ***********
Based upon all the competent evidence of record and the reasonable inferences therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 48-year-old high school graduate who had completed two years of business course work at Sacramento California Community College.
2. Plaintiff began working for the defendant-employer in about 1984 as a sheet metal mechanic. Plaintiff's job duties included installing sheet metal ductwork for heating and air conditioning units.
3. For approximately one year prior to his injury, plaintiff had also worked second, part-time jobs at tennis clubs stringing rackets, giving tennis lessons, and doing general tennis assistant work. Plaintiff's average weekly wage at the tennis job he held on his date of injury was approximately $377.83 (W-2 income of $12,034 divided by the 34.8 weeks from May 1 through December 31, 1999, less the three weeks he was out of work following the December 11, 1999 surgery, for a total of 31.85 weeks). After plaintiff's injury and until his surgery, his hours at the tennis club were unchanged.
4. On August 3, 1999, plaintiff was tearing out very heavy 40-50 year old heating and air conditioning ductwork. Plaintiff was unable to stand up straight due the low ceiling and as he pulled apart the duct, he had to balance himself on rafters in the cramped space. Plaintiff pulled back and then up on the ductwork and felt a sharp pop in his left shoulder. Plaintiff immediately dropped the duct section and stopped working due to the pain. Plaintiff reported his injury to his supervisor and immediately went to the emergency room. Defendants denied the compensability of the injury on a Form 61 on August 9, 1999. Plaintiff initiated this workers' compensation claim with a Form 18 and a Form 33 Request for Hearing on November 15, 1999.
5. It was unusual for plaintiff and his fellow employees to perform demolition work in such a cramped space as they had performed on August 3, 1999 and it was not their usual work routine to work with 24" x 36" duct, or with this very heavy duct. These circumstances provided an interruption of the work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences resulting in a compensable injury by accident.
6. Plaintiff presented to Dr. Chason Spencer Hayes, orthopedic surgeon, on August 3, 1999 and Dr. Hayes diagnosed plaintiff with an acute rotator cuff strain and restricted plaintiff to light duty.
7. Plaintiff returned to Dr. Hayes on August 10, 1999 complaining of a sudden increase in his right shoulder pain. Dr. Hayes rendered a secondary diagnosis of a ruptured biceps tendon in addition to the acute rotator cuff strain diagnosis.
8. Plaintiff's pain worsened and on October 21, 1999, Dr. Hayes ordered an MRI that revealed that plaintiff's biceps tendon was ruptured and plaintiff had many bone spurs around his acromial clavicular joint. Dr. Hayes performed an arthroscopic subcromial decompression with a distal clavical resection and debridement of plaintiff's biceps tendon stump on December 11, 1999.
9. Plaintiff's left shoulder pain continued after the surgery and in April 2000, Dr. Hayes opined, and the Full Commission finds as fact, that plaintiff had a residual disability from his ruptured biceps tendon. Following his surgery, plaintiff was out of work from both jobs for "about a month." He never returned to his job with Tompkins-Johnston. On December 11, 1999 the surgeon trimmed the torn rotator cuff, removed bone spurs, resected the distal clavicle and decompressed the acromion. The surgeon was unable to repair the ruptured biceps tendon. Plaintiff was left with permanent lifting restrictions and a probable permanent partial disability rating of 15% to the arm. His supervisor at Tompkins-Johnston, company Vice President Randy Aldridge, testified that although Graham was an excellent employee, Tompkins-Johnston no longer had any work for plaintiff to perform within his abilities and restrictions.
10. Plaintiff, to a reasonable degree of medical certainty, had an underlying condition that predisposed him to an injury. The lifting of the extremely heavy duct on August 3, 1999 precipitated events, which eventually led to plaintiff's surgery. As of April 2000, plaintiff was not yet at maximum medical improvement.
11. Plaintiff was unable to return to work in the job in which he was injured due to the injury and related disability. Prior to his injury, he worked a second job at a tennis club. After his recovery from the injury he expanded his hours at the tennis club and found additional tennis club employment to partially make up for the lost income caused by his inability to return to his job at Tompkins-Johnston.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff's lifting the old and extremely heavy ductwork in an unusually cramped space on August 3, 1999 constituted an interruption in plaintiff's normal work routine and the resulting injury was a compensable injury by accident. N.C. Gen. Stat. § 97-2(6), Harding v. Thomas Howard Co., 256 N.C. 427, 124 S.E.2d 109 (1962).
2. As a result of plaintiff's compensable injury by accident, plaintiff is entitled to temporary total disability at a compensation rate of $332.24 beginning August 4, 1999 and continuing for a month, the period when he could work at no job.
3. As a result of plaintiff's compensable injury by accident defendants are responsible for all of plaintiff's medical expenses incurred or to be incurred, for so long that such examinations, evaluations and treatment may reasonably be required to effect a cure, provide relief or lessen plaintiff's disability. N.C. Gen. Stat. §§97-2(19), 97-25; 97-25.1.
4. Plaintiff is entitled to temporary partial disability compensation for a period of 300 weeks from August 3, 1999. This partial disability compensation shall be 2/3 of the difference between his pre-injury average weekly wages from his two pre-injury jobs ($498.11 and $377.83 for a total of $875.94) and his total earnings on a week by week basis during the period of temporary partial disability; provided that for any week in which he earns less than $377.83 his wage shall be presumed to be $377.83.
5. Our case law is quite clear that an injured plaintiff may not combine the wages from concurrent employment prior to his injury in order to establish his compensation rate for temporary total disability purposes. McAnich v. Buncombe County, 347 N.C. 126, 489 S.E.2d 375
(1997). However, when an injured employee has concurrent employment prior to his injury, and then is unable to return to the job in which he was injured because of those injuries, then the wages from the concurrent pre-injury employment can be considered for the purposes of determining his partial disability under § 97-30. To obtain either temporary or permanent partial disability under § 97-30, the employee must show that he has suffered a reduction in his earning capacity due to his compensable injury. This can be shown by one of the tests set forth inHilliard v. Apex Cabinet, 305 N.C. 593, 595, 290 S.E.2d 682 (1982).
6. In this instance, plaintiff meets the tests for lost earning capacity under § 97-30 because he is unable to return to the job in which he was injured, he is unable to make as much money in his replacement employment, and his injury is the reason. Testimony of his supervisor, Randy Aldridge, proves this point, as does the testimony of the treating surgeon who determined that plaintiff would have permanent lifting restriction of thirty (30) pounds in the injured arm.
7. Once an injured employee proves his entitlement to lost earning capacity money under § 97-30 on a permanent partial disability basis, he then has the right to elect the more lucrative remedy either under § 97-31 or § 97-30. Gupton v. Builders Transport,320 N.C. 38, 357 S.E.2d 674 (1987).
8. An employee's post-injury earnings are "strong but not conclusive evidence of his ability to earn for purposes of determining" whether he is disabled as defined by § 97-2(9). Hendrix v. Linn-Corriher Corp.,317 N.C. 179, 189, 345 S.E.2d 374 (1986).
9. "[S]ince wages in the concurrent employment were not considered in computing prior earnings [for TTD purposes], they would likewise be disregarded in appraising the degree of disability after the accident." Larson's Workers' Compensation Law, § 60.31(g) at p. 10760 (vol. 5, 1998).
10. Plaintiff would be entitled to temporary total disability from the defendant Employer Tompkins-Johnston at the rate of $332.24 until he began earning in excess of his pre-injury tennis average weekly wage of $377.83 in his post-injury employment, at which point his compensation would be changed to temporary partial disability.
11. The temporary partial should be based upon 2/3 of the difference between his pre-injury average weekly wage with Tompkins-Johnston and the average weekly wage which he was able to earn post-injury in the tennis jobs, until he returns to work earning the same or greater wages or further Order of the Commission, provided that, Defendants shall disregard, or receive no credit for, the first $377.83 of earnings per week earned by the Plaintiff in determining the amount of partial disability owed under N.C. Gen. Stat. § 97-30.
12. Plaintiff has the right to receive permanent partial disability benefits under his choice of either § 97-30 or § 97-31 pursuant to the Gupton election.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to attorney's fee hereinafter provided, defendants shall pay to plaintiff compensation benefits at the rate of $332.24 per week for a four-week period from August 4, 1999. This compensation has accrued and shall be paid to plaintiff in a lump sum, subject to the attorney's fees hereinafter provided.
2. Defendants shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of plaintiff's left arm injury sustained August 3, 1999, for so long that such examinations, evaluations and treatment may reasonably be required to effect a cure, provide relief and will tend to lessen the period of plaintiff's disability.
3. Plaintiff may receive permanent partial disability benefits under his choice of either N.C. Gen. Stat. § 97-30 or N.C. Gen. Stat. § 97-31 pursuant to the Gupton election.
4. A reasonable attorney's fee of 25% of the compensation due plaintiff under Paragraphs 1 and 3 of this Award is approved for plaintiff's counsel. Twenty-five percent of the compensation due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel. Consideration and designation of this attorney's fee contemplates that the counsel for plaintiff shall continue and is hereby ORDERED to monitor submission of medical expenses to the defendant-employer.
5. The defendants shall pay the costs, including an expert witness fee in the amount of $235.00 to Dr. Chason Spencer Hayes.
This 8th day of August 2001.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING IN SEPARATE OPINION:
 S/______________ RENE C. RIGGSBEE COMMISSIONER