BRENDA McANINCH, EMPLOYEE v. BUNCOMBE COUNTY SCHOOLS, SELF INSURED (EDUCATOR BENEFITS SERVICES, INC., SERVICING AGENT), EMPLOYER

No. 378PA96

(Filed 5 September 1997)

**1. Workers' Compensation § 260 (NCI4th)— average weekly wages—statutory priority of methods**

N.C.G.S. § 97-2(5) sets forth in priority sequence five methods by which an injured employee's average weekly wages are to be computed. The fifth method set forth in the statute may not be used unless there has been a finding that unjust results would occur by using the previously enumerated methods.

**Am Jur 2d, Workers' Compensation §§ 418-430.**

**2. Workers' Compensation § 261 (NCI4th)— Form 21 agreement—average weekly wages—modification by Court of Appeals**

Where an Industrial Commission Form 21 agreement entered into between the employer and an injured employee (a school cafeteria worker) and approved by the full Commission calculated the employee's average weekly wages using the forty-two weeks she was employed during the school year under the third compensation method in N.C.G.S. § 97-2(5), the Court of Appeals erred by recalculating the employee's wages through application

of the fifth computation method set forth in the statute since (1) this constituted an improper contravention of the Commission's fact-finding authority and its finding of fairness in this case, and (2) the Form 21 agreement could not be modified or set aside on appeal in the absence of a finding that the agreement was obtained by fraud, misrepresentation, undue influence or mutual mistake.

**Am Jur 2d, Workers' Compensation §§ 418-430.**

3. **Workers' Compensation § 264 (NCI4th)— average weekly wages—employment producing injury—earnings from other employment**

The calculation of the average weekly wages of an injured employee may not include wages or income earned in employment or work other than that which produced the injury. Therefore, the Court of Appeals erred by recalculating the average weekly wages of an injured school cafeteria worker who worked only forty-two weeks per year for defendant school by including her earnings during the ten-week summer vacation period from babysitting, housekeeping and painting.

**Am Jur 2d, Workers' Compensation § 423.**

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) to review a unanimous decision of the Court of Appeals, 122 N.C. App. 679, 471 S.E.2d 441 (1996), reversing an order of the Industrial Commission entered 13 March 1995. Heard in the Supreme Court 12 May 1997.

*John A. Mraz, P.A., by John A. Mraz, for plaintiff-appellee.*

*Hedrick Eatman Gardner & Kincheloe, L.L.P., by Jeffrey A. Doyle, Allen C. Smith, and Scott M. Stevenson, for defendant-appellant.*

LAKE, Justice.

This case facially involves the proper method of calculating the average weekly wages in a worker's compensation action, and in essence it presents two underlying issues which are controlling. The first such issue is whether an Industrial Commission Form 21 agreement for compensation, entered into between the employer and the injured employee and approved by the full Commission, can be modified or set aside on appellate review in the absence of a finding by the Commission of error due to fraud, misrepresentation, undue

influence or mutual mistake. The second issue presented is whether the calculation of the average weekly wages of an injured employee may include wages or income earned in employment or work other than that in which the employee was injured. For the reasons hereinafter set forth, we hold the Court of Appeals erred in modifying the Form 21 agreement and in calculating the average weekly wages based on wages or income earned in employment other than that which produced the injury. Accordingly, we reverse the Court of Appeals and remand for reinstatement of the Commission's award based on the Form 21 agreement.

The plaintiff, Brenda McAninch, was employed as a cafeteria worker for the defendant, Buncombe County Schools, for approximately eight years until 16 August 1990 when she sustained a compensable injury in the course of her employment. As a result of this injury, the plaintiff remains totally disabled. Because plaintiff's position as a cafeteria worker existed only during the ten-month school year, she worked only forty-two weeks per year for the defendant. The plaintiff elected to receive her wages during the school year, rather than spread them throughout the entire year. Under this payment plan, the plaintiff received an average of $163.37 per week during the forty-two weeks that she worked, and she received no wages during the remaining ten weeks of the year. During the summer, plaintiff earned an average of $150.00 per week by babysitting, housekeeping and painting.

As found by the Commission, the defendant admitted liability for benefits under the Workers' Compensation Act, and on 3 October 1990, the parties entered into a Form 21 agreement reflecting the average weekly wage of $163.37 based on the forty-two-week period that plaintiff worked, which yielded a workers' compensation rate of $108.91 per week. This compensation rate did not reflect any wages the plaintiff earned from other employment undertaken during the ten-week summer vacation. This agreement was approved by the Commission.

Although the agreement provided that plaintiff would be compensated weekly so long as her disability continued, defendant refused to pay plaintiff during the summer vacation period on the ground plaintiff had worked and received paychecks only during the school year. Plaintiff filed a Form 33 request for a hearing, and the matter was heard before a deputy commissioner who determined plaintiff was entitled to compensation throughout the entire year.

However, the deputy commissioner also determined that plaintiff's average weekly wages should reflect her annual salary extended over fifty-two weeks. This calculation yielded average weekly wages of $132.49, instead of the $163.37 stipulated in the Form 21 agreement. The plaintiff appealed to the full Commission, which reinstated plaintiff's original average weekly wages and compensation rate, pursuant to the Form 21 agreement. The Commission also affirmed that plaintiff was entitled to compensation during the summer months and concluded that "[s]ince there is no basis to set aside the Form 21 Agreement in this case, it shall remain in full force and effect. N.C.G.S. § 97-17."

The defendant appealed to the North Carolina Court of Appeals, which reversed and remanded the case to the Industrial Commission. The Court of Appeals, in construing N.C.G.S. § 97-2(5), concluded that to obtain a result that was "fair and just to both parties," the Commission should have used a different method of calculation under the statute, which method "necessarily includes wages earned in employment other than that in which the employee was injured," *McAninch v. Buncombe County Schools*, 122 N.C. App. 679, 683, 471 S.E.2d 441, 445 (1996), and thus recalculated plaintiff's average weekly wages by aggregating her wages from defendant with her summer earnings and then dividing that sum by fifty-two. Defendant's petition for writ of certiorari on the basis of jurisprudential significance and conflict with a prior decision of this Court was allowed on 7 February 1997.

[1] The calculation of an injured employee's average weekly wages is governed by N.C.G.S. § 97-2(5). This statute sets forth in priority sequence five methods by which an injured employee's average weekly wages are to be computed, and in its opening lines, this statute defines or states the meaning of "average weekly wages." It is clear from its wording and the prior holdings of this Court that this statute establishes an order of preference for the calculation method to be used, and that the primary method, set forth in the first sentence, is to calculate the total wages of the employee for the fifty-two weeks of the year prior to the date of injury and to divide that sum by fifty-two. *Hensley v. Caswell Action Comm., Inc.*, 296 N.C. 527, 533, 251 S.E.2d 399, 402 (1979). This statute, as it pertains to this case, is set forth in part as follows:

[1] "Average weekly wages" shall mean the earnings of the injured employee in the employment in which he was working at

the time of the injury during the period of 52 weeks immediately preceding the date of the injury, including the subsistence allowance paid to veteran trainees by the United States government, provided the amount of said allowance shall be reported monthly by said trainee to his employer, divided by 52 . . . . [3] Where the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained. . . .

[5] But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

N.C.G.S. § 97-2(5) (Supp. 1996). The final method, as set forth in the last sentence, clearly may not be used unless there has been a finding that unjust results would occur by using the previously enumerated methods. *Wallace v. Music Shop, II, Inc.*, 11 N.C. App. 328, 181 S.E.2d 237 (1971). Ultimately, the primary intent of this statute is that results are reached which are fair and just to both parties. *Liles v. Faulkner Neon & Elec. Co.*, 244 N.C. 653, 660, 94 S.E.2d 790, 795-96 (1956). "Ordinarily, whether such results will be obtained . . . is a question of fact; and in such case a finding of fact by the Commission controls decision." *Id.*

[2] After correctly stating that this statute "provides a hierarchy" of five methods of computing the average weekly wages, and after further stating that "we must first calculate plaintiff's average weekly wages pursuant to the third method in [N.C.G.S. §] 97-2(5)" (the method employed by the Commission), *McAninch*, 122 N.C. App. at 683, 471 S.E.2d at 444, the Court of Appeals then undertook its own "fair and just" analysis and concluded that the third calculation method was not fair and just to defendant and thus that the fifth method of calculation must be employed, *id.* The Court of Appeals noted that this fifth method specifies no mathematical formula to be applied and instead simply states that such other method may be resorted to as will " 'most nearly approximate the amount which the injured employee would be earning were it not for the injury.' " *Id.* at 683, 471 S.E.2d at 444-45 (quoting N.C.G.S. § 97-2(5)). From this language, the Court of Appeals then concluded that such calculation

## McANINCH v. BUNCOMBE COUNTY SCHOOLS

[347 N.C. 126 (1997)]

"necessarily includes wages earned in employment other than that in which the employee was injured." *Id.* at 683, 471 S.E.2d at 445 (citing *Holloway v. T.A. Mebane, Inc.*, 111 N.C. App. 194, 198, 431 S.E.2d 882, 884 (1993)).

In the instant case, the Industrial Commission explicitly found that the plaintiff's average weekly wages of $163.37, which the parties and the Commission determined by applying forty-two weeks under the third computation method, would be most equitable to both parties. Hence, the recalculation of plaintiff's average weekly wages by the Court of Appeals through application of the fifth computation method constituted an improper contravention of the Commissions's fact-finding authority, and specifically its finding of fairness in this case. The final opinion and award of the full Commission concludes:

> In this case the Full Commission finds that a computation based on 10 months instead of 12 months would be most equitable. Also this is set forth in the Form 21 Agreement which was executed by the parties and approved by the Commission.

This Court has long held that, " '[u]nder the Workmen's Compensation Act, the Industrial Commission is made the fact-finding body, and the rule is, as fixed by statute and the uniform decisions of this Court, that the findings of fact made by the Commission are conclusive on appeal . . . when supported by competent evidence.' " *Inscoe v. DeRose Indus.*, 292 N.C. 210, 215, 232 S.E.2d 449, 452 (1977) (quoting *Rice v. Thomasville Chair Co.*, 238 N.C. 121, 124, 76 S.E.2d 311, 313 (1953)). "Appellate review of opinions and awards of the Industrial Commission is strictly limited to the discovery and correction of *legal* errors." *Godley v. County of Pitt*, 306 N.C. 357, 359-60, 293 S.E.2d 167, 169 (1982); *accord* N.C.G.S. § 97-86 (Supp. 1996). When the Court of Appeals reviews a decision of the full Commission, it must determine, first, whether there is competent evidence to support the Commission's findings of fact and, second, whether the findings of fact support the conclusions of law. *Hendrix v. Linn-Corriher Corp.*, 317 N.C. 179, 186, 345 S.E.2d 374, 379 (1986); *Hansel v. Sherman Textiles*, 304 N.C. 44, 49, 283 S.E.2d 101, 104 (1981). The Commission's findings of fact and conclusions of law based thereon in the present case were amply supported by the evidence before it and the Form 21 agreement.

Furthermore, the Commission in this case merely upheld the parties' own agreement, concluding that the agreed-upon terms were fair

and equitable. Where the employer and employee have entered into a Form 21 agreement, stipulating the average weekly wages, and the Commission approves this agreement, the parties are bound to its terms absent a showing of error in the formation of the agreement. N.C.G.S. § 97-17 provides in pertinent part:

> [N]o party to any agreement for compensation approved by the Industrial Commission shall thereafter be heard to deny the truth of the matters therein set forth, unless it shall be made to appear to the satisfaction of the Commission that there has been error due to fraud, misrepresentation, undue influence or mutual mistake, in which event the Industrial Commission may set aside such agreement.

N.C.G.S. § 97-17 (1991). "Thus, where there is no finding that the agreement itself was obtained by fraud, misrepresentation, mutual mistake, or undue influence, the Full Commission may not set aside the agreement, once approved." *Brookover v. Borden, Inc.*, 100 N.C. App. 754, 755-56, 398 S.E.2d 604, 606 (1990), *disc. rev. denied*, 328 N.C. 270, 400 S.E.2d 450 (1991). It is well settled that "[a]n agreement for the payment of compensation when approved by the Commission is as binding on the parties as an order, decision or award of the Commission unappealed from, or an award of the Commission affirmed upon appeal." *Tucker v. Lowdermilk*, 233 N.C. 185, 188, 63 S.E.2d 109, 111 (1951); *see also* N.C.G.S. § 97-87 (1991); *Hand v. Fieldcrest Mills, Inc.*, 85 N.C. App. 372, 380, 355 S.E.2d 141, 146, *disc. rev. denied*, 320 N.C. 792, 361 S.E.2d 76 (1987). This Court has held that "[in] approving a settlement agreement the Industrial Commission acts in a judiciary capacity and the settlement [agreement] as approved becomes an award enforceable . . . by a court decree." *Pruitt v. Knight Publishing Co.*, 289 N.C. 254, 258, 221 S.E.2d 355, 358 (1976); *see also* N.C.G.S. § 97-82 (Supp. 1996). In the case *sub judice*, the Commission concluded: "Since there is no basis to set aside the Form 21 Agreement in this case, it shall remain in full force and effect. N.C.G.S. § 97-17." Thus, the Court of Appeals had no basis for changing the method of calculating the plaintiff's average weekly wages.

[3] Further, with respect to the Court of Appeals' recalculation to include "wages earned in employment other than that in which the employee was injured," we hold that this aggregation of wages conflicts with our established law. In defining "average weekly wages," N.C.G.S. § 97-2(5) explicitly provides that average weekly wages

"*shall mean* the earnings of the injured employee *in the employment in which he was working at the time of the injury.*" N.C.G.S. § 97-2(5) (emphasis added). This issue was exclusively and definitively addressed by this Court in *Barnhardt v. Yellow Cab Co.*, 266 N.C. 419, 146 S.E.2d 479 (1966). In *Barnhardt*, reliance was also placed on the identical language from the fifth method of calculation relied on by the Court of Appeals in the instant case. In rejecting this premise, this Court in *Barnhardt* held:

> [N.C.G.S. § 97-2(5)] contains no *specific* provision which would allow wages from any two employments to be aggregated in fixing the wage base for compensation. Plaintiff contends, however, that such authority is implied in method [5], since "the amount which the injured employee would be earning were it not for the injury" necessarily includes earnings from all sources if the employee had more than one job.
>
> . . . .
>
> It seems reasonable to us that the Legislature, having placed the economic loss caused by a workman's injury upon the employer for whom he was working at the time of the injury, would also relate the amount of that loss to the average weekly wages which that employer was paying the employee. Plaintiff, of course, will greatly benefit if his wages from both jobs are combined; but, if this is done, [the employer] and its carrier, which has not received a commensurate premium—will be required to pay him a higher weekly compensation benefit than [the employer] ever paid him in wages. . . . [T]o combine plaintiff's wages from his two employments would not be fair to the employer. Method [5], "while it prescribes no precise method for computing 'average weekly wages,' sets up a standard to which results fair and just to both parties must be related." *Liles v. Electric Co.*, 244 N.C. 653, 658, 94 S.E.2d 790, 794.
>
> After having specifically declared, in the usual situations to which method (1) is applicable, that an injured employee's average weekly wages *shall be* the wages he was earning in the employment in which he was injured, had the Legislature intended to authorize the Commission in the exceptional cases to combine those wages with the wages from *any* concurrent employment, we think it would have been equally specific. As was said in *De Asis v. Fram Corp.*, [78 R.I. 249, 253, 81 A.2d 280, 282 (1951)]: "If that radical and important change were intended,

it is not likely that the legislature would have left such intent solely to a questionable inference."

. . . .

We hold that, in determining plaintiff's average weekly wage, the Commission had no authority to combine his earnings from the employment in which he was injured with those *from any other employment.*

*Barnhardt,* 266 N.C. at 427-29, 146 S.E.2d at 484-86 (final emphasis added).

With respect to the statutory language setting out the fifth calculation method, the Court of Appeals, 122 N.C. App. at 684, 471 S.E.2d at 445, relied on its opinion in *Holloway* as follows: " '[The statute's] language could hardly be more clear: the test is what the claimant would have earned if he had not been injured. . . . The statute does not refer to what he would have earned "in the same employment." ' " *Holloway,* 111 N.C. App. at 198, 431 S.E.2d at 885 (quoting 5 Arthur Larson, *Larson's Workers' Compensation Law* § 60.31(c), at 10-748 (1993)). This acceptance of Professor Larson's construction of the statute is contrary to the analysis in *Barnhardt* as set forth above and to the holding of *Barnhardt* which disallows the combining of earnings from the employment which produced the injury "with those from *any other employment." Barnhardt,* 266 N.C. at 429, 146 S.E.2d at 486 (emphasis added). This holding makes no distinction between the concurrent employment involved in *Barnhardt* and sporadic, seasonal employment such as we have in the instant case. Accordingly, we hold that the definition of "average weekly wages" and the range of alternatives set forth in the five methods of computing such wages, as specified in the first two paragraphs of N.C.G.S. § 97-2(5), do not allow the inclusion of wages or income earned in employment or work other than that in which the employee was injured. The decision of the Court of Appeals in *Holloway,* to the extent it is inconsistent with *Barnhardt* and this decision, is overruled.

We therefore reverse the decision of the Court of Appeals and remand this case to that court for further remand to the Industrial Commission for reinstatement of its award based upon the Form 21 agreement.

REVERSED AND REMANDED.