At the time of injury, plaintiff worked in two separate jobs. It is clear from the prevailing law (and is not an issue herein) that plaintiff's average weekly wage should be determined from the employment of his injury. N.C. Gen. Stat. § 97-2(5);Barnhardt v. Cab. Co., 266 N.C. 419 (1966); McAninchv. Buncombe County Schools, 347 N.C. 126, 489 S.E.2d 375
(1997). Plaintiff was able in the instant case to return to work within a short period of time in his part-time employment, but was totally disabled from work in his job of injury. The issue presented herein is whether the defendant, who is allowed by law to disregard plaintiff's pre-injury wages at his second or concurrent job for purposes of computing average weekly wage, can receive a credit for those same "disregarded" wages when calculating defendant's obligation to pay temporary partial disability. This issue does not appear to have been specifically addressed by our appellate courts. In the Interlocutory Opinion and Award by the Full Commission in the instant case, this panel adopted the analysis of the Full Commission in Karen McGuirev. Mid Atlantic Marketing, Incorporated, I.C. File Number 457082 (May, 1996) which determined that in computing "partial disability", plaintiff's average weekly wage in the employment of injury and the second job must be considered. Although this Full Commission panel agrees that in computing partial disability, wages from both of his employments should be considered, it appears that the Larson's preferred rule used by the deputy commissioner herein should be followed. Accordingly, since North Carolina does not allow aggregation of wages from concurrent employment to determine the compensation rate, wages earned from concurrent employment will be disregarded in determining the extent of disability. However, if the concurrent employment were enlarged or resorted to as a substitute for loss of earning from the employment where the employee was hurt, then the additional wages would be considered. 2 Larson, Workers'Compensation Law 60.31(g).
The Interlocutory Opinion and Award for the Full Commission filed July 22, 1998 in this case is VACATED and the following Opinion and Award is entered in its place and stead.
Based upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence MODIFIES and AFFIRMS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At the time of the alleged injury by accident, the parties were subject to and bound by the provisions of the Workers' Compensation Act.
2. An employer-employee relationship existed between defendant-employer and plaintiff.
3. Constitution State Service Company was the carrier on the risk.
In addition, the parties stipulated into evidence the following:
(a) Packet of medical records and reports.
(b) Form 19 dated September 7, 1995.
(c) Form 18 dated August 21, 1995.
 (d) Two pages of wage records from Grandma Shatley's Country Restaurant.
4. In addition to the above Stipulations, the parties stipulated to wage information after the hearing before the Full Commission which is now included in the record as transcript Exhibit pages 85-87.
 ***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 23 years old and a high school graduate. As of June 1995, he had been employed by defendant-employer and Barclay's, its predecessor, for two years as a file clerk. His job involved pulling, shelving and boxing files. The job also required the plaintiff to handle various documents. He was required to lift up to fifty pounds as a regular part of his work duties. His average weekly wage was $320.40.
2. In February, 1994 plaintiff sustained an injury to his back when he fell from a ladder at work. Subsequent diagnostic tests revealed that he had a bulging disk at L4-5, and he was treated conservatively with medication and physical therapy. His condition improved with treatment, and he was released from medical care in December, 1994. He did not miss any work as a result of the injury and was able to perform his regular job duties without difficulty after his medical release.
3. On June 9, 1995 a shipment of 900 boxes of files came into plaintiff's work area, and he was required to put them in numerical order. Using a hand truck, he began to move the boxes around. At some point he began to turn in order to get another box and stepped backwards onto the wheel of the hand truck. He then lost his balance and fell, landing on his buttocks. He experienced an immediate sharp pain in his back. After rolling over onto his stomach, he tried to get up but his legs did not seem to function properly. A co-worker heard him moaning and came to assist him. Later, an ambulance was summoned.
4. After initial treatment at the emergency room, plaintiff returned to Dr. Beaver, the orthopedic surgeon who had treated him for his prior back injury. When Dr. Beaver examined him on June 19, 1995, he had recurrent symptoms of nerve root irritation. Dr. Beaver kept him out of work and prescribed medication for him. His condition did not improve by June 27, 1995, so the doctor ordered an MRI. Defendants, however, refused to accept the claim as compensable and would not pay for the test causing the testing to be delayed until August. The MRI revealed a protrusion at the L4-L5 interspace, but the findings were actually not as bad as they had been a year earlier. In view of plaintiff's young age, Dr. Beaver recommended conservative treatment. Plaintiff received some treatment, but he did not follow up regularly with the doctor due to financial considerations as his claim had been denied.
5. Dr. Beaver released plaintiff to return to light duty work in September 1995, but the company did not have any work available within his restrictions.
6. Plaintiff remained out of work until February when he was advised that a position was available in Customer Service. On February 9, 1996, plaintiff went to the office and spent two-to-three hours observing and learning about the receptionist position which involved fielding telephone calls throughout the day. The job was performed from a seated position at a switchboard, although it was possible to stand up within the reach of the telephone cord. During the time plaintiff observed the job, he began to experience increased pain due to the prolonged sitting, so he called Dr. Beaver to inquire as to the advisability of accepting the position. Dr. Beaver did not recommend any work which involved prolonged sitting; consequently, plaintiff turned down the job. His employment with the company was then terminated.
7. In February 1996, Dr. Beaver released plaintiff from medical care. Although he indicated that plaintiff had reached maximum medical improvement, a rating was not given at this time because Dr. Beaver believed that the matter was no longer covered by workers' compensation benefits and the defendant-employer did not require a rating. Dr. Beaver opined that plaintiff's condition would possibly improve with time because of the moist and soft nature of his juvenile disk, but Dr. Beaver opined as well that the plaintiff had a fifty-fifty chance of having recurring problems with his back. At the time of plaintiff's release from the medical care of Dr. Beaver in February 1996, plaintiff was incapable of earning his pre-injury wages in the same employment or any other employment.
8. On June 9, 1995 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. Tripping over the hand truck and falling constituted an unusual occurrence which interrupted his regular work routine. The fall was also a specific traumatic incident of the work assigned. As a result of the accident, plaintiff materially aggravated a preexisting back condition causing him to become unable to work. Plaintiff also required medical treatment. The back condition for which he was subsequently treated was a proximate result of plaintiff's fall on that date.
9. As a result of his June 9, 1995 injury, plaintiff has been totally unable to perform his regular job duties with defendant-employer from June 9, 1995 through the date of hearing on March 21, 1996 before the Deputy Commissioner and continuing. During the period plaintiff was out of work, defendant-employer did not offer any work to plaintiff which was suitable to his physical restrictions. The receptionist position offered in February, 1996 was unsuitable because it required prolonged sitting which aggravated plaintiff's pain. Dr. Beaver opined that this position would aggravate plaintiff's pain.
10. At the time of his injury, plaintiff was working a second job on a part-time basis as a kitchen manager at Grandma Shatley's Country Restaurant. Although he remained unable to return to work for defendant-employer because of the heavy lifting required, he was able to resume his job duties for the restaurant on or about June 30, 1995 (based on 2 week pay period on Ex. P. 2.) since those duties allowed him to move around. He continued working at the restaurant through the date of hearing before the Deputy Commissioner. At said hearing, wage information for plaintiff's employment at Grandma Shatley's Country Restaurant was submitted for the period after his injury, but not for the period prior to his injury. Without earlier records the Commission could not determine plaintiff's wage.
11. The record was reopened by the Full Commission for receipt of additional wage information and the parties have now stipulated to plaintiff's wages from Grandma Shatley's for the year prior to his injury. These records are added to the record transcript as Exhibit pages 85-87. Plaintiff's average weekly earnings at Grandma Shatley's Country Restaurant prior to his injury was $52.53. Plaintiff's work hours at Grandma Shatley's increased after his injury. Plaintiff's actual earnings at Grandma Shatley's after his injury are indicative of his wage-earning capacity.
12. No finding is made regarding the extent of permanent partial disability that plaintiff may have sustained as a result of his injury. The parties have requested that this issue be reserved.
13. Defendant's denial of compensability and defense of this claim were unreasonable. A co-worker heard a noise and found plaintiff lying on the floor. The injury was reported immediately, and plaintiff was taken to the hospital. Dr. Beaver made it clear that plaintiff's back condition resulted from the work injury. A true dispute did not arise until the receptionist job was offered to plaintiff in February, 1996.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On June 9, 1995 plaintiff sustained an injury by accident or specific traumatic incident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. §97-2(6).
2. At the time of injury, plaintiff worked in two separate jobs. It is clear from the prevailing law (and is not an issue herein) that plaintiff's average weekly wage should be determined from the employment of his injury. N.C. Gen. Stat. § 97-2(5);Barnhardt v. Cab. Co., 266 N.C. 419 (1966); McAninchv. Buncombe County Schools, 347 N.C. 126, 489 S.E.2d 375
(1997). Plaintiff was able in the instant case to return to work within a short period of time in his second part-time employment, but was totally disabled from work in his job of injury. Therefore, the question presented is whether the defendant, who is allowed by law to disregard plaintiff's pre-injury wages at his second or concurrent job for purposes of computing average weekly wage, can receive a credit for those same "disregarded" wages when calculating defendant's obligation to pay temporary partial disability compensation. The Full Commission, herein, has determined that the Larson's preferred rule should be followed. Since North Carolina does not allow aggregation of wages from concurrent employment to determine the compensation rate, wages earned in the concurrent employment will be disregarded in computing partial disability, unless the concurrent employment is enlarged as a substitute for loss of earnings in the employment of injury. 2 Larson's Workers'Compensation Law, Section 60.31(g).
3. Plaintiff is entitled to compensation from defendant-employer at the rate of $213.60 per week until he returned to his part-time job at Grandma Shatley's, on or about June 30, 1995 for the temporary total disability he sustained as a result of this injury by accident on June 9, 1995. Thereafter, plaintiff is entitled to temporary partial disability compensation based upon 66 2/3 percent of the difference between plaintiff's pre-injury average weekly wage and the average weekly wage which plaintiff was able to earn after June 30, 1995 until he returns to work earning the same or greater wages, or until further order of the Commission. Provided however, defendant shall disregard, or receive no credit for, the first $52.53 earned each week by plaintiff in determining the amount of partial disability owed to plaintiff. N.C. Gen. Stat. § 97-29
and 30.
4. Plaintiff is entitled to have defendants provide all medical compensation arising from this injury by accident. N.C. Gen. Stat. §§ 97-2(19), 97-25.
5. In that the defendant-employer defended this claim without reasonable grounds, plaintiff is entitled to have attorney's fees assessed against the defendant-employer as part of the costs of this action. An assessment of a $2,000.00 attorney's fee against defendant is reasonable. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to plaintiff temporary total disability compensation at the rate of $213.60 per week from June 10, 1995 until he returned to his part-time job at Grandma Shatley's, on or about June 30, 1995. Thereafter, defendant shall pay to plaintiff temporary partial disability compensation based upon 66 2/3 percent of the difference between plaintiff's average weekly wage of $320.40 and the average weekly wage which plaintiff was able to earn after June 30, 1995 until he returns to work earning the same or greater wages, or until further order of the Commission. Provided however, defendant shall disregard, or receive no credit for plaintiff's first $52.53 of earnings each week for purposes of determining the amount of partial disability owed to plaintiff.
2. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his injury by accident which are reasonably necessary to effect a cure, provide relief or lessen the period of disability when bills for the same have been submitted and approved through procedures adopted by the Industrial Commission.
3. An attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded herein is approved for plaintiff's counsel. Plaintiff's attorney's fee obligation to his attorney shall be reduced by the $2,000.00 defendant-employer is ordered to pay herein. Plaintiff's counsel shall receive a lump sum from the accrued compensation and shall thereafter receive every fourth check.
4. Defendants shall pay the costs of this proceeding, including an attorney's fee in the amount of $2,000.00, which shall be paid directly to plaintiff's counsel.
 ***********
IT IS FURTHER ORDERED based upon the request of the parties that plaintiff's entitlement to permanent partial disability, if any, is RESERVED for subsequent determination.
 S/_____________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ J. HOWARD BUNN, JR. CHAIRMAN
S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER