***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties as well as the additional evidence of the deposition of Dr. Jones. The appealing party has shown good grounds to reconsider this matter and to receive into evidence the deposition of Dr. Jones. Accordingly, the Full Commission modifies and affirms the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement dated 15 February 2000 as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission, and the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. All parties have been correctly designated as above, and there is no question as to nonjoinder or misjoinder of parties.
4. An employment relationship existed between plaintiff and defendant-employer on or about 21 February 1998.
5. Plaintiff's average weekly wage was $117.28. This yields a compensation rate of $78.19.
6. At the time of the injury, plaintiff was also employed as a sewing operator for the OuterBanks Company. In this other employment, plaintiff earned an average weekly wage of $211.25.
7. Plaintiff sustained an admittedly compensable injury by accident on 21 February 1998. Defendants admitted liability for this claim pursuant to a Form 60 dated 5 March 1998.
8. Plaintiff received temporary total disability compensation from 22 February 1998 through 9 January 1999.
9. In addition to the deposition transcripts, the parties stipulated into evidence in this matter stipulated exhibit one, the Industrial Commission forms; stipulated exhibit two, plaintiff's medical records (which includes the supplemental records that were received after the hearing before the Deputy Commissioner); and stipulated exhibit three, wage information from defendant-employer and from OuterBanks Co. The Deputy Commissioner admitted into evidence in this matter defendants' exhibit one, records of plaintiff's wage verification (gross wages and hours worked).
10. The depositions of Drs. Melany Furimsky and Deanna Boyette were received into evidence before the Deputy Commissioner. Thereafter, the deposition of Dr. Franklin Douglas Jones was received into the evidentiary record by the Full Commission.
11. There is no separation of triable issues. The issues to be determined as a result of the hearing before the Deputy Commissioner are whether plaintiff is entitled to receive ongoing temporary partial disability benefits as a result of her alleged diminished wage-earning capacity, and whether plaintiff's current job with defendant-employer is within her restrictions and/or is make-work employment and therefore is not indicative of plaintiff's wage-earning capacity.
 ***********
Based upon the greater weight of the evidence of record in this matter, the Full Commission finds as follows
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, plaintiff was 44 years old. Plaintiff completed the ninth grade and subsequently obtained her G.E.D. Plaintiff's prior work history consists of sewing and sales positions.
2. On the date of her admittedly compensable injury by accident, plaintiff was employed on a full-time basis as a sewer for OuterBanks Company and on a part-time basis as a sales associate for defendant-employer. Plaintiff primarily worked evenings and weekends in her part-time job for defendant-employer. There are more customers during the evenings and on weekends as well as more business during those times as compared to weekday customer and business volume.
3. Plaintiff worked as a sales clerk for defendant-employer in the tool department. Plaintiff was paid an hourly rate and also earned commissions based upon how many items she sold and/or rang up for customers on the cash register.
4. Prior to her admittedly compensable injury by accident, plaintiff had been employed for three years full-time by OuterBanks. As a sewing machine operator, plaintiff worked on three different sewing machines. This sewing machine operator job was a sit-down job that required plaintiff to use her right foot to depress a pedal that operated the machine. Plaintiff had never used her left foot when operating the sewing machines and has not been trained to use her left foot when operating the sewing machines.
5. OuterBanks moved overseas in March 1999. Therefore, assuming plaintiff is physically capable of returning to work as a sewer with this employer, she would be unable to do so as a result of the employer's relocation.
6. On 21 February 1998, plaintiff suffered a compensable injury by accident arising out of and in the course of her employment with defendant-employer when a slate pool table fell on and crushed her right foot. Plaintiff also sustained a sprain of and contusions to her left wrist in the injury by accident. Plaintiff was taken to the emergency room at Onslow Memorial Hospital, and then came under the care of Dr. Wayne B. Venters at Onslow Orthopedics.
7. Plaintiff has undergone a great deal of medical treatment as a result of her compensable injury by accident. After the injury by accident, plaintiff treated on a regular basis with Dr. Venters who ordered a course of physical therapy. Dr. Venters treated plaintiff through approximately July of 1998, when he referred plaintiff for pain management treatment since plaintiff had had an unsuccessful trial return to work and was diagnosed with reflex sympathetic dystrophy (RSD). Plaintiff was referred by defendants to Dr. Boyette, an orthopedic surgeon, who first examined plaintiff on 2 September 1998. Dr. Boyette diagnosed RSD, referred plaintiff for pain management and released her to return to work at a sedentary job with restrictions that she be allowed to elevate her leg for four hours a day, three days a week.
8. Plaintiff returned to work for defendant-employer on approximately 9 September 1998. Due to her physical limitations, plaintiff was assigned work in the office in a filing position to assist the managers. No other employee had ever before or has since held this position and this is not a permanent position but was rather created to accommodate plaintiff's restrictions. Plaintiff was paid MITT pay or benefit pay while working in this position. However, plaintiff only worked in this position for a short period of time and then she transferred back to the floor in a modified sales clerk position, where she earns an hourly rate of pay plus commissions. As of the date of the hearing before the Deputy Commissioner, plaintiff continued to work in this capacity. Plaintiff works as many hours per week as she can or as she desires, approximately ten hours per week.
9. At least through the date of the hearing before the Deputy Commissioner, plaintiff had continued to receive medical evaluations and treatment from various physicians at the Center for Pain Management. As a result, plaintiff has been diagnosed with complex regional pain syndrome or RSD that is causally related to her compensable injury by accident. For her chronic pain, plaintiff was referred to Dr. Jones, a neurosurgeon, by Dr. Raymond Minard of Pitt County Anesthesia. Dr. Jones first evaluated plaintiff on 9 March 2000 for right foot pain and specifically to determine if plaintiff would be a candidate for the implantation of a dorsal column stimulator. Based on plaintiff's chronic intractable pain and the lack of other procedures by which to treat plaintiff's pain, Dr. Jones felt that plaintiff would benefit from the implantation of a trial dorsal column stimulator. In conjunction with Dr. Johnson of Anesthesia Pain Clinic, Dr. Jones implanted the trial stimulator which provided excellent relief as reported by plaintiff on her return visit of 17 August 2000. As a result, on 23 August 2000, Dr. Johnson and Jones implanted a permanent spinal cord stimulator, to relieve pain in order to attempt to increase plaintiff's functionality.
10. As a result of the procedure and the healing wound, plaintiff was taken out of work by Dr. Jones from 23 August 2000 until 9 October 2000. Dr. Jones indicated that plaintiff would have been restricted from any heavy lifting, bending, pushing or pulling during the six to twelve week recovery period following the surgery. According to Dr. Jones, the dorsal column stimulator would not place further restrictions on plaintiff. However, Dr. Jones indicated that restrictions concerning plaintiff's foot injury would be better addressed by an orthopedist. Furthermore, with respect to any restrictions concerning plaintiff's RSD, Dr. Jones deferred to the pain clinic and Dr. Johnson.
11. On 9 October 2000, Dr. Johnson's partner, Dr. Lisa Nocera, indicated that plaintiff could return to work full time with no restrictions but that plaintiff should have a chair available to sit if needed. Neither Dr. Johnson nor Dr. Nocera was deposed.
12. Plaintiff has been released by Dr. Boyette from an orthopedic standpoint to return to work with no restrictions; however, Dr. Boyette defers to the pain management physicians with respect to any disability or limitations as a result of plaintiff's RSD. The pain management physician who was deposed in this matter, Dr. Furimsky, declined to address plaintiff's physical restrictions or to assign a permanency rating, indicating that she would defer to the orthopedic surgeon with respect to disability and return to work issues. Dr. Furimsky further indicated that she did not know if Dr. Jones would be in a position to better determine disability issues.
13. Although Dr. Jones restricted plaintiff from work until 9 October 2000 and restricted plaintiff from any heavy lifting, bending, pushing or pulling during the six to twelve week recovery period following the surgical implantation of the stimulator, thereafter both Dr. Jones and Dr. Furimsky deferred to the opinion of Dr. Boyette who has released plaintiff to return to work full duty with respect to her foot injury from an orthopedic standpoint. Furthermore, the pain clinic note of Dr. Nocera released plaintiff to full duty but indicated that plaintiff should have a chair available.
14. The modified office job that plaintiff held for a short period after 9 September 1998 was created specifically for her. This position is not a permanent position and no employee has held the job since plaintiff. There is no evidence of record to show that other employers would hire plaintiff in such an office job with the accommodations provided to her by defendants. Plaintiff's office job with defendant-employer as modified, therefore, is not ordinarily available in the competitive job market and was not an accurate reflection of her capacity to earn wages
15. In her current job as a sales clerk, plaintiff is permitted to use a chair next to the cash register and she is not required to walk around the floor of the store to assist customers. Plaintiff is allowed to set her own schedule, and to take breaks whenever needed. Prior to her injury, plaintiff had a set schedule of hours and days worked. Currently, plaintiff is able to come and go as she pleases and is not on a set schedule with the other employees. Plaintiff is permitted to wear athletic shoes, something that is against the dress code for sales clerks. No other sales clerks are allowed to set their own schedules, take breaks as often as needed, use a chair while working, or wear athletic shoes on the job. Furthermore, the sales manager testified that defendants would not hire anyone within the general workforce to be a sales employee if that person indicated a need to sit, set his or her own schedule, and wear athletic shoes. There is no evidence of record to show that other employers would hire plaintiff as a sales clerk with the accommodations provided to her by defendants. Plaintiff's current job with defendant-employer as modified, therefore, is not ordinarily available in the competitive job market and is not an accurate reflection of her capacity to earn wages.
16. Plaintiff has undergone necessary and beneficial medical treatment since her admittedly compensable injury by accident, including the implantation of the spinal cord stimulator, which has offered plaintiff some relief of her symptoms. Although plaintiff received relief of her pain from the stimulation implantation, she continues to take prescription medication for pain including Neurontin and MS Contin.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with defendant-employer on 21 February 1998. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's diagnosis of complex regional pain syndrome is causally related to her admittedly compensable injury by accident of 21 February 1998. See Click v. Pilot Freight Carriers, 300 N.C. 164, 265 S.E.2d 389
(1980).
3. As a result of her admittedly compensable injury by accident, plaintiff was temporarily totally disabled from 22 February 1998 through at least 9 September 1998, the date she returned to work, with the exception of the one or two brief interim periods of time that she attempted to work light duty. N.C. Gen. Stat. § 97-29.
4. The modified office and modified sales clerks jobs held by plaintiff since her return to work in September 1998 were so modified by defendants to accommodate plaintiff's limitations that these jobs are not ordinarily available in the competitive job market. As such, neither the modified office work nor the modified sales clerk job that plaintiff currently holds is indicative of plaintiff's true ability to earn wages. Accordingly, plaintiff also has been totally disabled within the meaning of the Workers' Compensation Act since 9 September 1998, and continuing until such time as she returns to work in suitable employment at her pre-injury average weekly wage. Saums v. Raleigh Community Hsp.,346 N.C. 760, 487 S.E.2d 746 (1997); Peoples v. Cone Mills Corp.,316 N.C. 426, 342 S.E.2d 798 (1986); N.C. Gen. Stat. §§ 97-2(9) and97-29.
5. When determining average weekly wage, it is not permissible to combine plaintiff's earnings from the employment in which she was injured with those from any other employment. Accordingly, the wages earned by plaintiff in her full-time sewing position with OuterBanks Company cannot be used to determine the amount of temporary total or temporary partial disability compensation owed plaintiff. McAninch v. Buncombe CountySchools, 347 N.C. 126, 489 S.E.2d 375 (1997).
6. As a result of her admittedly compensable injury by accident and the resulting related complex regional pain syndrome and subject to the limitations of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to receive medical compensation for all medical treatment that was or is reasonably necessary to effect a cure, give relief, or lessen the period of plaintiff's disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Subject to the attorney's fee approved below and a credit owed defendants for all wages earned by plaintiff, defendants shall pay plaintiff total disability compensation at the weekly rate of $78.19 from 9 September 1998 and continuing until such time as plaintiff returns to suitable employment at the same or greater wages or until further order of the Commission.
2. Plaintiff's counsel is entitled to receive a reasonable attorney's fee of 25% of the compensation awarded plaintiff herein. Therefore, if defendants owe plaintiff any accrued compensation, defendants shall deduct one-fourth of that amount, if any, and shall forward it to plaintiff's counsel of record. Thereafter, plaintiff's counsel shall receive every fourth compensation check.
3. Subject to the limitations of N.C. Gen. Stat. § 97-25.1, defendants shall provide plaintiff with all medical compensation that was or is reasonably necessary to effect a cure, give relief, or lessen the period of plaintiff's disability.
4. Defendants shall bear the costs of this proceeding due the Commission.
This the ___ day of March 2002.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER DISSENTING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER