***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and arguments before the Full Commission. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. The Full Commission AFFIRMS with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. The date of the injury which is the subject of this claim is August 6, 2009.
2. On August 6, 2009, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On August 6, 2009, the employer-employee relationship existed between Plaintiff and Defendant-Employer.
4. On August 6, 2009, Defendant-Employer employed three or more employees.
5. On August 6, 2009, the compensation carrier on the risk was EMC Insurance Companies.
6. Defendants accepted Plaintiff's claim as compensable.
7. As of the date of the hearing, Defendants had paid all medical expenses related to this claim, as well as temporary total disability benefits from the date of injury to the present at the rate of $253.03 per week.
8. The documents entered into evidence include the Pretrial Agreement, marked Stipulated Exhibit 1, and Stipulated Exhibit 2, consisting of Industrial Commission Forms, Plaintiff's 2008 W-2, and a TR Lee payroll journal and Form 22 for employee Nathaniel J. Taylor.
9. The issue for determination by the Full Commission is Plaintiff's average weekly wage.
 ***********
Based upon the competent evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT *Page 3 
1. Plaintiff, who is 40 years old, went to work for Defendant-Employer as a Service Tech on December 15, 2008.
2. Defendant-Employer's business consists of a propane department and an automotive department. In the propane department the employees service, deliver and maintain commercial and residential propane tanks. Employees who work in the automotive department change tires, drive a wrecker, repair brakes, and perform inspections.
3. Plaintiff, who possesses a CDL with Haz Mat endorsement, worked primarily in the propane department filling up the gas trucks, pumping gas, delivering propane tanks, and repairing and repossessing tanks. On occasion he worked in the automotive department driving the wrecker or changing tires. He was not certified to perform vehicle inspections so he never worked in that capacity.
4. Plaintiff testified that he thought he was paid $12.50 per hour when he worked for Defendant-Employer, but he could not be sure because he never received a pay stub showing the taxes and other deductions. Mr. Lee also thought that Plaintiff was paid $12.50 per hour.
5. Defendant-Employer's propane business was much busier in the winter months when customers needed their home heating propane tanks filled or repaired. Therefore, employees who worked on the propane side of Defendant-Employer's business could expect to work more hours during the winter and reduced hours during the warmer months of the year.
6. This is borne out by the Form 22 wage chart that documents Plaintiff's gross earnings and hours worked from his date of hire on December 15, 2008 through August 4, 2009. From December 15, 2008 through the end of the month, Plaintiff worked 91 hours. In January and February 2009 Plaintiff worked 175 and 151 hours, respectively. From March 1 through March 15, 2009, Plaintiff worked 72 hours. Therefore, during the winter, from December 15, 2008 *Page 4 
through March 15, 2009, Plaintiff worked on average 37.62 hours per week. However, consistent with Mr. Lee's and Plaintiff's testimony at the hearing, Plaintiff's hours dropped off beginning in mid-March and continuing through the warmer months, such that for the next 21 weeks that his wages are documented on the Form 22, Plaintiff worked on average 23.7 hours per week.
7. It is impossible to confirm Plaintiff's estimated hourly rate of $12.50 based on the stipulated Form 22 wage chart, because the totals reflected for each month under the "amount earned" column do not equate to $12.50 times the number of hours he worked each month. Sometimes the result produced by multiplying $12.50 by the hours worked is lower than what is reflected in the last column, and sometimes it is significantly higher.
8. Defendant-Employer hired Nathaniel Taylor to replace Plaintiff in November 2009. Mr. Taylor agreed to work for an hourly wage of $9.00 per hour. From November 12, 2009 through December 31, 2009, Mr. Taylor worked on average 39.14 hours per week. Mr. Lee testified that Taylor worked more hours in the automotive shop than Plaintiff did, and that while Taylor was capable of driving the propane truck, he didn't really use him for that.
9. Defendants offered no testimony from Mr. Lee or Plaintiff that would support a finding that Plaintiff's salary would have been cut to $9.00 an hour had he not been injured, or that he would have continued to work for Defendant-Employer had his hourly salary been cut.
10. Mr. Taylor did not work for Defendant-Employer during the 52 weeks prior to Plaintiff's injury. Moreover, Mr. Taylor's employment was not of the same grade, character or class as that of Plaintiff's employment with Defendant-Employer.
11. Defendant-Employer did not employ anyone of the same grade, class and character as Plaintiff during the 52 weeks prior to Plaintiff's date of injury. *Page 5 
12. Plaintiff did not work for Defendant-Employer for a period of 52 weeks prior to his date of injury. Therefore, neither the first nor the second method set forth in N.C. Gen. Stat. § 97-2(5) for calculating the average weekly wage can be used in this case.
13. Plaintiff's Form 22 wage chart shows his earnings during the winter of 2008-2009 and also shows his earnings during some but not all of the warmer months.
14. If Plaintiff's Form 22 did not show his earnings during the winter of 2008-2009 and only showed his earnings during the warmer months, calculating his average weekly wage by dividing those earnings by the number of weeks worked (i.e., method 3) would not produce a result fair to Plaintiff, because it would not take into account the time that Plaintiff could expect to earn more because he would be working more hours on average.
15. On the other hand, combining Plaintiff's actual wages from December 15, 2008 through August 4, 2009 with an estimate of the wages he wo0uld have earned during an additional six-week period of the heating season, without at the same time including additional weeks for the warmer months, does not produce a result fair to Defendants. This method essentially ignores the period of time from August to November when Plaintiff, had he been working, would have earned substantially less than he earned during the winter.
16. Calculating Plaintiff's average weekly wage by dividing his earnings from December 15, 2008 through August 4, 2009 by the number of weeks and parts thereof that Plaintiff worked for Defendant-Employer prior to his injury, produces a result which is fair and just to both parties.
17. Plaintiff's average weekly wage is $369.87 ($12,364 divided by 33 and 3/7ths weeks) resulting in a compensation rate of $246.59.
 *********** *Page 6 
The foregoing Stipulations and Findings of Fact engender the following:
 CONCLUSIONS OF LAW
1. N.C. Gen. Stat. § 97-2(5) ". . . sets forth in priority sequence five methods by which an injured employee's average weekly wages are to be computed. . . ." McAninch v. Buncombe CountySchools, 347 N.C. 126, 129, 489 S.E.2d 375, 377 (1997). "Ultimately the primary intent of this statute is that results are reached which are fair and just to both parties."Id. at 130, 489 S.E.2d at 378. "Method five `may only be utilized subsequent to a finding that the previous methods were either inapplicable, or were applicable but would fail to produce results fair and just to both parties.'" Thompson v. STS Holdings,Inc., COA10-581 at 8, filed June 21, 2011, citing Conyers v.New Hanover Cty. Schools,188 N.C. App. 253, 259, 654 S.E.2d 745, 750 (2008). Inasmuch as method three produces a result that is fair and just to both parties, to the extent that it takes into account both the busy and the slow times of Defendant-Employer's business, Plaintiff's average weekly wage should be calculated utilizing method three without resort to method five or wages from another employee whose employment was not of the same grade, class and character as that of Plaintiff. In so holding, the Full Commission specifically rejects the notion advanced by Defendants that Plaintiff's average weekly wage should be calculated based on the lower hourly rate earned by Mr. Taylor.
2. The method Defendants used on the Form 22 to calculate Plaintiff's average weekly wage, which involved calculating an average daily wage and multiplying that number by seven, has been specifically rejected by the Court of Appeals in Bond v. FosterMasonry, Inc., 139 N.C. App. 123, 532 S.E.2d 583 (2000), and also produced a slightly higher average weekly wage than that awarded herein, resulting in an overpayment of compensation to date for which Defendants are entitled to a credit. *Page 7 
 ***********
The foregoing Stipulations, Findings of Fact and Conclusion of Law engender the following:
 AWARD
1. Plaintiff's average weekly wage is calculated to be $369.87, which generates a compensation rate of $246.59.
2. To the extent that there has been an overpayment to date, Defendants shall be entitled to a credit against any future award of permanency.
3. Defendants shall pay the costs due the Commission.
This the ___ day of July, 2011.
 S/___________________ TAMMY R. NANCE COMMISSIONER
CONCURRING:
 S/___________________ DANNY LEE McDONALD COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1