***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of Deputy Commissioner Holmes and enters the following Opinion and Award:
 *********** EVIDENTIARY MATTERS
Defendants filed a Motion to Dismiss on April 11, 2011. The Full Commission held Defendants' motion in abeyance pending review by Order filed June 3, 2011. The Full Commission finds that good grounds do not exist to grant Defendants' motion and the Motion to Dismiss is hereby DENIED. *Page 2 
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. It is stipulated that all parties are properly before the Industrial Commission and that the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. It is stipulated that the parties were subject to the Workers' Compensation Act at the time of the injury.
3. At all relevant times herein, RICHMOND YARNS, INC. was insured by SYNERGY COVERAGE SOLUTIONS.
4. The date of injury is October 30, 2008.
5. Defendants have paid all related medical bills and there are no outstanding medical bills related to this claim.
6. The parties submitted stipulated exhibits marked as Stipulated Exhibit 1, which includes the Industrial Commission Forms and Filings, Plaintiff's Medical Records, Previous Correspondence between the parties, and the Carrier Payout History.
 ***********
As set forth in Deputy Commissioner Holmes' January 6, 2011 Opinion and Award, the Full Commission addresses the following:
 ISSUES
1. Whether Plaintiff is entitled to payment of his permanent partial impairment rating? *Page 3 
2. Whether Defendants are entitled to a credit for overpayment of benefits pursuant to N.C. Gen. Stat. § 97-42 due to the Industrial Commission's approval of the Form 24 application?
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was working for Defendant-Employer Richmond Yarn, Inc. as a "card tender." On October 30, 2008, Plaintiff injured his left index finger while cleaning the card with a choke gun. The claim was accepted by Synergy Coverage Solutions pursuant to a Form 60 filed December 16, 2008.
2. Plaintiff was initially treated at FirstHealth Richmond Memorial Hospital on October 30, 2008, for lacerations on his left finger. The x-rays showed no fracture, dislocation, or foreign body. He was given a tetanus injection and told to follow up with Dr. Mark Brenner, an orthopedist, who became Plaintiff's treating physician.
3. Plaintiff underwent physical therapy along with other conservative treatment and continued to make progress through January 2009. He was then released to return to work with no restrictions by Dr. Brenner on February 6, 2009. However, Plaintiff was subsequently provided a work note from Mr. Slater, PA-C, giving a ten (10) pound lifting restriction. In April 2009, Plaintiff complained of hypersensitivity to the scar on his finger and was referred to Dr. Brenner for a surgical consult and appropriate work restrictions. On April 28, 2009, no surgery was recommended and Plaintiff was released again to return to work as tolerated.
4. By May 19, 2009, Dr. Brenner again noted Plaintiff reported doing better with *Page 4 
well-maintained range of motion and only some thickening of the scar tissue on his finger. Plaintiff still complained of throbbing and aching at night. However, Dr. Brenner again released Plaintiff to return to work completely, without restrictions.
5. On June 4, 2009, Plaintiff was discharged from therapy with all goals having been met. Plaintiff had increased range of motion and strength, and decreased sensitivity of the scar.
6. Plaintiff returned to Dr. Brenner on August 20, 2009, where it was noted that Plaintiff was making improvements and only had some discomfort in the DIP joint. No work restrictions were assigned at that time and Plaintiff was once again released to regular duty work as of August 27, 2009, and again on September 1, 2009.
7. Based on the full duty releases, Defendants filed a Form 24 application, which was ultimately granted on September 2, 2009, and was made effective as of the date of the filing on July 30, 2009. However, Defendants had already paid Plaintiff through September 3, 2009. On October 1, 2009, Dr. Brenner again evaluated Plaintiff and noted Plaintiff had reached maximum medical improvement. He noted that Plaintiff "retains" a twenty percent (20%) permanent partial disability (PPD) rating to his index finger.
8. Dr. Brenner subsequently completed a NC Workers' Compensation Medical Status Questionnaire form on November 12, 2009, and listed that Plaintiff had reached maximum medical improvement. He again did not assign any work restrictions. Dr. Brenner did, however, reevaluate Plaintiff's permanent partial disability rating, and he assessed a ten percent (10%) rating to Plaintiff's index finger.
9. The Full Commission hereby determines that an average of the two ratings is appropriate, and therefore assigns a fifteen percent (15%) PPD rating to Plaintiff's index finger. *Page 5 
10. Plaintiff testified he has not seen Dr. Brenner or any other physician for his condition since approximately October 1, 2009.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. There are five methods of calculating an employee's average weekly wages under N.C. Gen. Stat. § 97-2(5). The first method is calculated by totaling the employee's earnings "during the period of 52 weeks immediately preceding the date of the injury" and dividing it by 52. Bond v. Foster Masonry, Inc.,139 N.C. App. 123, 532 S.E.2d 583 (2000).
2. The second method is used when the injured employee has "lost more than seven consecutive calendar days at one or more times . . . although not in the same week" during the 52 weeks immediately preceding the date of the injury. The average weekly wage is then calculated by totaling the injured employee's earnings for the 52 weeks preceding the injury and dividing by the number of weeks remaining after the time lost has been deducted. Id.
3. The third method is used "where the employment prior to the injury extended over a period of fewer than 52 weeks." Id. The average weekly wage is then calculated by "dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages" provided that results are fair and just to both parties. Id.
4. The fourth method is used "where, by reason of a shortness of time . . . or the casual nature or terms of his employment, it is impractical to compute the average weekly wage as above defined."Id. In this situation, "regard shall be had to the average weekly wage which during the 52 weeks previous to the injury was being earned by a person of the, same grade and *Page 6 
character employed in the same class of employment in the same locality or community." Id.
5. The fifth method is used "where for exceptional reasons the foregoing would be unfair, either to the employer or employee."Id. In this situation, "such other methods of computing average weekly wage may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury." Id. This method "clearly may not be used unless there has been a finding that unjust results would occur by using the previously enumerated methods." McAninch v. Buncombe CountySchools, 347 N.C. 126, 489 S.E.2d 375 (1997).
6. In the present case, the third method of calculation is the most appropriate. Plaintiff has not worked for a full 52 weeks prior to the injury, and thus his wages cannot be properly calculated using the first or second method. The fourth method of calculation cannot be used as Defendant-Employer has already gone out of business and the records of a "similar" employee cannot be obtained. As for the fifth method, Plaintiff's time of employment was not so short as to constitute "casual employment." Additionally, it would be unfair to the Defendant-Employer to use the fifth method of calculation or any other method of calculation where Plaintiff worked for Defendant-Employer for 18.71 weeks prior to the injury.
7. As Plaintiff's actual wages are reflected in the Form 22 wage chart and Plaintiff's employment was for less than 52 weeks prior to the injury, the third method of calculation is the most appropriate method to be used to properly calculate Plaintiff's average weekly wage. Plaintiff's wages are thus calculated by dividing his gross earnings provided on the Form 22 wage chart by the number of weeks and parts thereof during which Plaintiff earned wages.
8. According to the Form 22 wage chart, Plaintiff worked a total of 18.71 weeks prior to his injury. The adjuster apparently added one extra day in October, but as Plaintiff's *Page 7 
injury was on October 30, 2008, the last day of October should not be used in the calculation of his average weekly wage.
9. According to Defendant-Employer's records, Plaintiff earned $5,776.00 during the applicable time frame. $5,776.00 divided by 18.71 weeks calculates to an average weekly wage of $308.71. $308.71 multiplied by .6667 yields a compensation rate of $205.82.
10. In cases involving the schedule of injuries listed in N.C. Gen. Stat. § 97-31, the claimant is entitled to payment for disability in lieu of all other compensation. For Plaintiff's left index finger, the statute provides 45 weeks for total loss. N.C. Gen. Stat. § 97-31(2).
11. Plaintiff was assigned an original twenty percent (20%) PPD rating and a final ten percent (10%) PPD rating to the index finger by Dr. Brenner. An average of the ratings is fifteen percent (15%), which calculates to 6.75 weeks for the finger (45 multiplied by 15%). Plaintiff's compensation rate of $205.82 multiplied by 6.75 weeks is $1,389.29.
12. Payments made by Defendants to an injured employee during the period of his disability, which by the terms of the North Carolina Workers' Compensation Act are not "due and payable" when made, may, subject to the approval of the Commission be deducted from the amount to be paid as compensation. N.C. Gen. Stat. § 97-42;Cross v. Falk Integrated Techs., Inc.,190 N.C. App. 274, 661 S.E.2d 249 (2008).
13. In this case, Defendants filed a Form 24 application based on Plaintiff's multiple full duty releases, which was approved on September 2, 2009, effective as of the date of its filing on July 30, 2009. Defendants, however, had already paid Plaintiff disability compensation through September 3, 2009.
14. Thus, the payments that were made to Plaintiff from July 30, 2009, to September 3, 2009, were "due and payable" as the Commission had not yet approved termination of *Page 8 
Plaintiff's benefits pursuant to the Form 24 application until September 2, 2009. As the payments made were "due and payable", Defendants are not entitled to a credit pursuant to N.C. Gen. Stat. § 97-42. However, pursuant to the North Carolina Supreme Court decision in Moretz v. Richards Assoc., Inc.,316 N.C. 539, 342 S.E.2d 844 (1986), further interpreted in the North Carolina Court of Appeals decision in Estes v. N.C. StateUniv., 102 N.C. App 52, 401 S.E.2d 384 (1991), an additional determination is necessary to determine whether Plaintiff would receive more than he is entitled to under the Act. As the Commission has affirmed the decision to terminate Plaintiff's benefits effective July 30, 2009, Defendants have paid $204.22 per week for five weeks, and therefore have made $1,021.10 in overpayments to Plaintiff. This amount is more than Plaintiff was entitled to receive, and therefore Defendants are entitled to an offset in the amount of the overpayment. Moretz v. Richards Assoc., Inc.,316 N.C. 539, 342 S.E.2d 844 (1986); Estes v. N.C. StateUniv., 102 N.C. App 52, 401 S.E.2d 384 (1991).
15. However, according to the Form 22 calculations, Defendants underpaid Plaintiff by $1.60/week. Plaintiff's compensation rate is $205.82, but Plaintiff was paid $204.22 in error. Plaintiff was paid from the date of injury, October 30, 2008, until November 9, 2008, when he returned to work (10 days), and then again from November 23, 2008, through July 30, 2009 (250 days). Thus, Plaintiff was underpaid for a total of 260 days or 37.14 weeks and is owed for underpayment in the amount of (37.14 weeks multiplied by $1.60/week) $59.42.
16. Defendants' offset for overpayment is reduced by Plaintiff's credit for underpayment ($1,021.10 — $59.42) and Defendants retain an offset in the amount of $961.68.
17. Plaintiff's PPD benefits discussed above were calculated in the amount of $1,389.29. Thus, Defendants have already paid Plaintiff most of the value of his PPD benefits in the form of an overpayment of temporary total disability benefits. After Defendants' offset is *Page 9 
subtracted from Plaintiff's PPD benefits ($1,389.29 — $961.68), Plaintiff is owed $427.61 in PPD benefits.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Plaintiff is entitled to payment of a fifteen percent (15%) PPD rating to his right index finger in the amount of $1,389.29.
2. Defendants are entitled to an offset for overpayment of benefits in the amount of $961.68 from the effective date of the approved Form 24 application.
3. After Defendants' credit is subtracted from Plaintiff's PPD benefits, Plaintiff is owed, and Defendants shall pay, $427.61 to Plaintiff for his PPD benefits.
4. Defendants shall pay the costs.
This the 11th day of August, 2011.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 10 
 S/___________________ LINDA CHEATHAM COMMISSIONER *Page 1