***********
In accordance with the directives of the North Carolina Court of Appeals, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant in June 1994.
3. In June, 1994 plaintiff suffered a compensable occupational disease to his right elbow. The defendant accepted compensability for this occupational disease pursuant to a Form 21 Agreement which was approved by the Industrial Commission 10 January 1995.
4. The defendant is self-insured with Key Risk Management Services as the servicing agent.
5. Plaintiff's average weekly wage reflected on the Form 21 was $394.80, yielding a compensation rate of $263.21 per week.
6. Plaintiff's tax records are admitted into evidence as Stipulated Exhibit #1.
 ***********
In accordance with the directives of the North Carolina Court of Appeals, the Full Commission makes the following:
 FINDINGS OF FACT
1. In June, 1994 plaintiff was a 32-year old male employed by defendant as a hydraulic brake press operator. Plaintiff began working in that capacity for defendant in November, 1991. This position consisted of lifting pieces of metal with an electronic hoist, manually adjusting the piece of metal placed on the press, and programming the press so the metal is shaped into forks for electric pallet trucks which defendant manufactures.
2. Plaintiff has a high school equivalency education and also received extensive military training in electronics and hydraulics during his more than 16 years in the National Guard. Additionally, plaintiff is certified as an emergency medical technician.
3. In June, 1994, plaintiff began experiencing right elbow discomfort. On 5 July 1994 plaintiff sought treatment from Dr. Richard Huberman of Kinston Orthopedic. Dr. Huberman diagnosed right lateral epicondylitis, or what is commonly referred to as right tennis elbow, and administered a series of steroid injections and conservative treatment.
4. When conservative treatment failed, Dr. Huberman performed a right lateral release on 7 December 1994. Plaintiff's right elbow improved and Dr. Huberman released plaintiff to return to light duty work on 19 January 1995, with the restriction of no heavy lifting.
5. On 14 December 1994, the parties entered into a Form 21 Agreement with respect to the right elbow epicondylitis, which was approved by the Commission on 10 January 1995. Defendant paid plaintiff temporary total disability benefits at a compensation rate of $263.21 per week from 7 December 1994 through 18 January 1995.
6. On 19 January 1995, plaintiff returned to work. Defendant accommodated plaintiff's restrictions by significantly modifying his position so that he was only required to program the computer and not move heavy pieces of metal. Because of the modifications in plaintiff's job upon his return to work on 19 January 1995, his return is not indicative of plaintiff's ability to compete with others in the job market and so does not accurately reflect plaintiff's earning capacity.
7. Plaintiff stopped working for defendant on 24 January 1995. Plaintiff enrolled in a course and received his emergency medical technician certificate on 11 February 1995. Plaintiff's brother had started a company, Better Health Ambulance Service, and plaintiff went to work for his brother's company on 12 February 1995.
8. Plaintiff's position with his brother's company did not constitute a true job available in the competitive job market. Plaintiff obtained the position as a favor by his brother while plaintiff recuperated from his surgery. Plaintiff was unable to perform many of the tasks required of an EMT due to his lifting restrictions. Accordingly, the job did not constitute suitable employment and was not indicative of plaintiff's earning capacity. Plaintiff continued to work for Better Health Ambulance Service until November 1995.
9. On 25 September 1995 plaintiff returned to Dr. Huberman complaining of increased pain in his right elbow. Dr. Huberman referred plaintiff to another doctor in his practice, Dr. Andrew Siekanowicz.
10. During the summer of 1995, plaintiff was on active duty with the National Guard in Germany. Plaintiff's duties in Germany required him to remove, replace, manufacture and repair engines in a factory setting as part of military support. Plaintiff did not perform heavy lifting during this tour of duty, but he did have to pass a physical prior to going to Germany.
11. In addition to plaintiff's tour of duty in Germany in 1995, plaintiff spent three days a month on military duty 65% of the year, and two days a month for the remaining 35% of the year. Plaintiff only went on two drills in 1996 and none in 1997. The record is incomplete as to the exact dates that plaintiff participated with the National Guard.
12. Plaintiff first saw Dr. Siekanowicz on 19 October 1995. Dr. Siekanowicz diagnosed plaintiff with right salvage tennis elbow, and following a period of unsuccessful conservative treatment, performed salvage tennis elbow surgery on 5 December 1995. Defendant paid plaintiff temporary total disability compensation from 7 December 1995 to 24 April 1996. Plaintiff returned to work as an emergency medical technician in his brother's ambulance business on or about 26 April, 1996 earning diminished wages. Defendant paid plaintiff partial disability compensation from 25 April 1996 through 19 May 1996 for the difference in his average weekly wage at defendant and what he made at his brother's ambulance business.
13. On 24 January 1996, one year after plaintiff left work at defendant's plant, Dr. Siekanowicz diagnosed plaintiff with left tennis elbow. Dr. Siekanowicz testified that plaintiff's right tennis elbow caused his left tennis elbow, in that he was forced to overuse his left arm as a result of the right arm injury.
14. Dr. Siekanowicz referred plaintiff to Dr. Nirschl, a doctor in Maryland, in April, 1996 when it became apparent that plaintiff's 5 December 1995 right salvage tennis elbow surgery failed. On 20 May 1996 Dr. Nirschl performed another right salvage tennis elbow procedure. Defendant paid plaintiff temporary total disability compensation benefits from 20 May 1996 through 23 June 1996 and partial disability compensation benefits from 24 June 1996 through 9 February 1997. Plaintiff returned to work in June, 1996 at his brother's ambulance business earning diminished wages. Plaintiff did not work 5 February 1997 through 5 March 1997, but he was unable to recall why he did not work during that month.
15. At the time of hearing before the deputy commissioner plaintiff was still employed by his brother's ambulance company in a part-time capacity. Since 5 May 1997 through the date of hearing and continuing, plaintiff earned $5.50 per hour, four hours per day, five days a week, yielding an average weekly wage of $110.00 per week. At the time of hearing, plaintiff primarily worked as a dispatcher at the ambulance company.
16. Dr. Siekanowicz now practices in Maryland. Dr. Edwin Cooper, from Kinston Orthopedics, has taken over plaintiff's day-to-day treatment, although plaintiff still travels some for treatment with Dr. Siekanowicz in Maryland. Dr. Cooper found that plaintiff had only moderate limitation on the right arm and full motion on the left arm, with no obvious bilateral muscle weakness. Dr. Cooper also noted plaintiff's muscular appearance despite years of alleged inactivity.
17. Greater weight is given to the opinion of Dr. Siekanowicz over that of Dr. Huberman on the issue of whether plaintiff's left elbow problems are causally related to plaintiff's compensable right elbow problems.
18. Plaintiff saw Dr. Edwin Cooper of Kinston Orthopedic first on 24 June 1997 and then on 4 August 1997. Dr. Cooper was not plaintiff's treating physician because plaintiff was still under Dr. Siekanowicz's care. However, because Dr. Siekanowicz had relocated to Maryland, Dr. Cooper served as the local contact for medication refills. Dr. Cooper noted that plaintiff's main limitation was being unable to fully straighten out his right elbow, which is only a moderate limitation of motion. When plaintiff appeared before Dr. Cooper in 1997, he still maintained a muscular appearance and did not have any wasting of muscle tone consistent with his alleged non-use.
19. Plaintiff's left tennis elbow condition is causally related to his admittedly compensable right elbow condition.
20. Dr. Sheldon Downes, a professor at East Carolina University with a Ph.D. degree in vocational rehabilitation, met with plaintiff on referral from plaintiff's counsel. Dr. Downes reviewed plaintiff's medical records from Dr. W.C. Gray (which were never submitted into evidence) and those of Dr. Siekanowicz. Dr. Downes gave the opinion, and the Full Commission finds, that plaintiff's modified position at defendant, as well as plaintiff's current position with his brother's ambulance company, were "make work".
21. Based on the greater weight of the evidence, the Form 21 Agreement approved by the Commission was not obtained by fraud, misrepresentation, mutual mistake or undue influence. The average weekly wage on this Form 21 accurately reflects plaintiff's wages at defendant. Further, plaintiff's post-injury employment with defendant and with his brother's ambulance service do not constitute suitable employment and so do not operate to rebut the presumption of continuing disability established by the Form 21.
22. The greater weight of the medical evidence is that at the time the record closed in this matter, plaintiff had not reached maximum medical improvement with respect to his right elbow and had not received a permanent partial disability rating; however plaintiff has been able to earn some wages. While plaintiff has requested permanent and total disability, no determination can be made on permanent disability until such time as plaintiff reaches maximum medical improvement, is rated and an election of remedies can be made.
23. Defendant's defense of this claim was not without reasonable ground. There was sufficient conflicting evidence regarding both the causal connection of plaintiff's left salvage tennis elbow and of the suitability of plaintiff's post-injury employment to provide a reasonable basis for defendant's position in this case.
 ***********
In accordance with the directives of the North Carolina Court of Appeals, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On 7 December 1994 plaintiff suffered an admittedly compensable occupational disease arising out of and in the course of his employment with defendant which resulted in disability. N.C. Gen. Stat. § 97-2(6) and § 97-53(13).
2. Plaintiff's left salvage tennis elbow condition is causally related to plaintiff's admittedly compensable right salvage tennis elbow, and so is compensable. N.C. Gen. Stat. § 97-2(6); Heatherly v. MontgomeryComponents, Inc., 71 N.C. App. 377, 379, 323 S.E.2d 29, 30 (1984), disc.review denied, 313 N.C. 329, 327 S.E.2d 890 (1985).
3. Once a Form 21 Agreement is entered into by the parties and approved by the Commission, a presumption of disability attaches in favor of the employee. Saums v. Raleigh Community Hospital, 346 N.C. 760,487 S.E.2d 746 (1997). After the presumption attaches, the burden shifts to the employer "to show not only that suitable jobs are available, but that plaintiff is capable of getting one, taking into account both physical and vocational limitations." Kennedy v. Duke Univ. Med. Center,101 N.C. App. 24, 33, 398 S.E.2d 677, 682 (1990). A job which is modified because of the employee's limitations to the extent that it is not ordinarily available in the competitive job market is not representative of the employee's capacity to earn and thus does not constitute "suitable employment." People v. Cone Mills Corp.,316 N.C. 426, 342 S.E.2d 798 (1986).
4. Plaintiff's jobs upon his return to work with defendant and with his brother's ambulance service were both modified to the extent that neither constituted "suitable employment" for the purpose of rebutting the presumption of continuing disability established by the Form 21 Agreement. Therefore, plaintiff is entitled to temporary total disability compensation from the effective date of the Form 21 Agreement, 7 December 1994, and continuing until he returns to suitable employment or until further Order of the Commission. N.C. Gen. Stat. § 97-29.
5. Defendant is entitled to deduct from the compensation due to plaintiff any amounts plaintiff has earned in his various employments since 7 December 1994. N.C. Gen. Stat. § 97-2.
6. Plaintiff is not entitled to count any wages lost from the National Guard in the computation of his average weekly wage. McAninch v. BuncombeCounty Schools, 347 N.C. 126, 489 S.E.2d 375 (1997).
7. The greater weight of the evidence is that the Form 21 Agreement, approved by the Commission, was not obtained by fraud, misrepresentation, mutual mistake or undue influence. The terms of the Form 21 Agreement shall not be set aside. N.C. Gen. Stat. § 97-82.
8. This case was defended upon reasonable grounds and plaintiff is not entitled to attorney fees or penalties from the defendant. N.C. Gen. Stat. § 97-88.1.
9. Plaintiff is entitled to have defendant provide all medical treatment arising from plaintiff's his right elbow injury and his left elbow injury to the extent it tends to effect a cure, give relief or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25.
10. Plaintiff has not reached maximum medical improvement.
11. Because defendant ceased paying compensation on a Form 21 award without seeking permission of the Commission, penalties pursuant to N.C. Gen. Stat. § 97-18(g) must be assessed. Accordingly, plaintiff is entitled to the 10% penalty for late payment of compensation as computed by the statute. N.C. Gen. Stat. § 97-18(g).
 ***********
In accordance with the directives of the North Carolina Court of Appeals, the Full Commission enters the following:
 AWARD
1. As a result of plaintiff's admittedly compensable injury of 7 December 1994, defendant shall pay to plaintiff temporary total disability compensation benefits from 7 December 1994 and continuing until plaintiff returns to work in suitable employment or until further Order of the Commission. Defendant shall deduct from the sums due to plaintiff any wages plaintiff has earned or continues to earn in the future during the period in question.
2. A reasonable attorney's fee in the amount of 25% of the sums awarded plaintiff shall be deducted and paid directly to plaintiff's counsel.
3. Defendant shall pay all medical expenses incurred or to be incurred in the future by plaintiff as a result of his compensable right elbow injury and left elbow injury for so long as such treatments tend to effect a cure, give relief or tend to lessen plaintiff's disability.
4. Whether plaintiff is entitled to permanent and total disability or permanent partial disability is reserved for subsequent determination until such time as plaintiff reaches maximum medical improvement and is rated.
5. Defendant shall pay to plaintiff a 10% penalty on all indemnity compensation not timely paid according to statute.
6. Defendant shall pay the costs.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER
 S/_______________ LAURA K. MAVRETIC COMMISSIONER