***********
Upon review of the competent evidence of record, with reference to the errors assigned, and considering the briefs and oral arguments of the parties, the Full Commission finds no good grounds to receive further evidence, or to rehear the parties or their representatives. Upon *Page 2 
reconsideration of the evidence, the Full Commission affirms in part and reverses in part the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act, and Key Risk Management Services [now CorVel] was the third-party administrator in this matter.
2. On October 15, 2007, an employment relationship existed between the parties.
3. At all times relevant to these proceedings, the Wake County Sheriff's Office employed Plaintiff as a full-time deputy sheriff.
4. Plaintiff contracted with Defendant on a temporary basis to provide security and/or law enforcement services at the 2007 North Carolina State Fair. Defendant paid Plaintiff.
5. On October 14, 2007 and on October 15, 2007, the date of Plaintiff's injury, Plaintiff worked for Defendant at the 2007 North Carolina State Fair.
6. In October 2006, Plaintiff worked for and received payment from Defendant on a temporary basis to provide security and/or law enforcement services at the 2006 North Carolina State Fair.
7. Between October 2006 and October 2007, Plaintiff did not work for Defendant, but did continue in his full-time position for the Wake County Sheriff's Office.
8. On October 15, 2007, Plaintiff sustained a work injury while in the course and scope of his employment when he fractured his left wrist while apprehending a suspect. *Page 3 
9. On or about November 14, 2007, Plaintiff filed a Form 18.
10. On or about October 25, 2007, Defendant accepted Plaintiff's October 15, 2007 work injury via a Form 60.
11. Plaintiff received medical treatment, and it is the understanding and belief of the parties that Defendant paid any authorized medical and other associated bills related to this workers' compensation claim.
12. Pursuant to a Form 22, Plaintiff worked for Defendant on October 14, 2007 and October 15, 2007, and received a gross wage of $306.25.
13. In 2007, Plaintiff received a gross total of $306.25 in compensation from Defendant for 12.25 hours of work performed at the rate of $25.00 per hour in connection with his employment at the 2007 North Carolina State Fair.
14. On October 13, 2006 and October 14, 2006, Plaintiff worked for Defendant for 12.25 hours. On October 21, 2006 and October 22, 2006, Plaintiff worked for Defendant for 12.50 hours. During the 2006 North Carolina State Fair, Plaintiff worked for Defendant a total of 24.75 hours, and Defendant paid Plaintiff $23.17 per hour, for a total gross compensation in 2006 of $573.46.
15. From October 16, 2007 through December 12, 2007, Plaintiff received temporary total disability compensation at a weekly compensation rate of $30.00.
16. As a result of Plaintiff's October 15, 2007 work injury, he sustained a comminuted, displaced intra-articular distal radius fracture. On October 19, 2007, Plaintiff underwent an open reduction and internal fixation of the left wrist, performed by Dr. Kimberly Ann Barrie.
17. On January 14, 2008, Plaintiff's authorized treating physician released him with a *Page 4 
10 percent permanent partial disability rating of the left hand. Plaintiff did not obtain a second opinion evaluation.
18. The parties completed a Form 21 dated June 11, 2008, and submitted it for approval by the North Carolina Industrial Commission. The Form 21 recorded an average weekly wage of $5.89 and calculated a compensation rate of $30.00.
19. On June 20, 2008, Special Deputy Commissioner Kristi M. Bellamy sent correspondence to the parties advising that she was unable to approve the Form 21 as submitted, and asking Key Risk Management Services to clarify the nature of Plaintiff's position at the North Carolina State Fair, whether Plaintiff had other employment at the time of injury, and for wage information for a similar employee.
20. On July 10, 2008, Special Deputy Commissioner Bellamy filed an Order stating that Key Risk Management Services sent her correspondence advising that there was no good way to provide wages for a like employee, as Plaintiff was filling a temporary position of a very short duration involving varying schedules and hours. Special Deputy Commissioner Bellamy then referred this matter to the hearing docket.
21. Neither party filed a Form 33.
22. The parties did not receive an Order to mediate [prior to the Full Commission appeal], but the parties conferred informally and were unable to resolve the issue satisfactorily. The parties will immediately notify the North Carolina Industrial Commission if any settlement is subsequently reached.
 *********** ISSUE *Page 5 
The issue to be determined is how should Plaintiff's average weekly wage be calculated under N.C. Gen. Stat. § 97-2(5)?
 *********** Based upon the competent and credible evidence of record, the Full Commission makes the following: FINDINGS OF FACT
1. Plaintiff is 34 years old, with a date of birth of July 17, 1976. Beginning in 2002, Defendant employed Plaintiff as a part-time, temporary employee at the North Carolina State Fair. Plaintiff's job duties with Defendant included providing security and/or law enforcement services at the North Carolina State Fair grounds. While working for Defendant, Plaintiff's duties were substantially the same as those with the Wake County Sheriff's Office, in that he enforced the laws of the State of North Carolina and provided security for both employees of and citizens attending the North Carolina State Fair, had authority to arrest suspects for violations of North Carolina law, was in his Wake County sheriff's deputy uniform, wore his badge, and both drove his patrol car and carried his side-arm issued to him by the Wake County Sheriff's Office.
2. On October 15, 2007, Plaintiff suffered a compensable work injury while pursuing a suspect at the North Carolina State Fair. While in pursuit of the suspect, Plaintiff fell down and fractured his left wrist. On October 19, 2007, Plaintiff underwent an open reduction and internal fixation surgery of the left wrist.
3. At the hearing before the Deputy Commissioner, Plaintiff testified that the Wake County Sheriff's Office provides security and/or law enforcement services every year at the North Carolina State Fair. Each year, Captain Green of the Wake County Sheriff's Office sends out an e-mail advising those who are interested in working at the North Carolina State Fair to *Page 6 
respond with their dates of availability, and then Captain Green creates a written schedule based upon response to his e-mail. The dates that Plaintiff would request to work for Defendant would be the dates that he was off duty with the Wake County Sheriff's Office.
4. According to Plaintiff, he did not need to apply each year to work for Defendant at the North Carolina State Fair. Instead, Plaintiff testified that he filled out paperwork, "kind [sic] as a re-hire for the state. But basically, it's up to our captain as far as — if you get your paperwork in to him on time and you submit your dates that you can work, then he puts you on the schedule. The state doesn't really have anything to do with who works it."
5. The Full Commission finds as fact that Plaintiff's testimony is credible.
6. Plaintiff would typically work 12 hour shifts that could extend over the time by 15 to 30 minutes. In 2007, the agreed upon wage was $25.00 per hour. Mr. Charles Riedenburg, safety director for Defendant, testified that Defendant had no contract with Plaintiff to work a certain number of nights. According to Plaintiff, Captain Green of the Wake County Sheriff's Office scheduled him to work at the 2007 North Carolina State Fair for a total of 36 hours, or three shifts. However, Plaintiff was only able to work a total of 12.25 hours out of the scheduled 36 hours as a result of his October 15, 2007 work injury.
7. Plaintiff's first scheduled working shift for Defendant in 2007 began at 6:55 p.m. on Sunday, October 14, 2007 and ended on Monday, October 15, 2007 at 7:06 a.m. Defendant paid Plaintiff $306.25 for 12.25 hours of work. The record does not contain a schedule showing the specific time periods that Captain Green scheduled Plaintiff to work; however, Plaintiff testified that at the time he worked at the North Carolina State Fair on October 14, 2007 through 15, 2007, he would have been on his four days off from his regular job at the Wake County *Page 7 
Sheriff's Office. The parties stipulated that the dates of the 2007 North Carolina State Fair ran from Friday, October 12, 2007 through Sunday, October 21, 2007.
8. On January 14, 2008, Dr. Barrie found that Plaintiff was at maximum medical improvement, assigned a 10 percent permanent partial disability rating to his left hand, and released Plaintiff to return to full-duty work. Based upon the stipulations of the parties, Defendant paid Plaintiff temporary total disability compensation at the rate of $30.00 per week from October 16, 2007 through December 12, 2007. However, based upon Dr. Barrie's note releasing Plaintiff to return to full-duty work on January 14, 2008, and the lack of any evidence in the record to the contrary regarding Plaintiff's ability to return to work, the Full Commission finds that Plaintiff was medically disabled from working from October 16, 2007 through January 14, 2008. Plaintiff is entitled to receive temporary total disability compensation during all or any portion of this period of time when he was out of work due to his October 15, 2007 work injury.
9. Pursuant to the April 28, 2010 Full Commission Order, Plaintiff served written discovery requests upon Defendant seeking additional evidence on the nature of the agreement between Defendant and the Wake County Board of Commissioners/Wake County Sheriff's Office concerning the lending of Wake County Sheriff's deputies in order to provide security/law enforcement services at the North Carolina State Fair. The only document produced by Defendant in response to these written discovery requests was an unsigned contract entitled "Agreement by North Carolina State Agency for Off-Duty Employment of Wake County Deputy Sheriff." Although the e-mail from Captain Green of the Wake County Sheriff's Office that Plaintiff referred to in his testimony is responsive to Request for Production numbers two, three, five, and six, and is a document encompassed within the April 28, 2010 Full Commission Order to be included in the record, Defendant did not produce this e-mail, offer a reason as to why the *Page 8 
e-mail was unavailable for production, and Plaintiff undertook no measures to secure production of this e-mail.
10. Based upon the testimony from Plaintiff concerning the e-mail from Captain Green of the Wake County Sheriff's Office, it would appear that some type of relationship and/or understanding existed between Defendant and the Wake County Board of Commissioners/Wake County Sheriff's Office concerning the lending of Wake County deputy sheriffs in order to provide security/law enforcement services at the North Carolina State Fair. However, there is insufficient evidence in the record to determine the exact nature of this relationship and/or understanding. Moreover, there is insufficient evidence in the record to determine whether a mutual aid agreement existed pursuant to N.C. Gen. Stat. § 160A-288.
11. It would further appear that there were requests by both the Full Commission and the Special Deputy Commissioner for information concerning the wages of a similar employee, but the parties took the position that there were no employees similar enough to Plaintiff in order to undertake a proper wage determination. However, the Full Commission finds that Defendant listed in response to Interrogatory number one of Plaintiff's written discovery requests the name of Mr. Joel Keith, Fair Grounds Chief of Police for Defendant. The Full Commission also finds as fact that Defendant has its own police agency that provides public safety and security for the North Carolina State Fair grounds. Nevertheless, there is insufficient evidence in the record to determine Plaintiff's average weekly wage based upon a comparison with similar employees.
12. Based upon the greater weight of the evidence, the Full Commission finds that it would not be fair and just to the parties to use any of the first four methods under N.C. Gen. Stat. § 97-2(5) to determine Plaintiff's average weekly wage, given the temporary nature of Plaintiff's employment with Defendant, and the fact that the record does not contain evidence upon which *Page 9 
to compare Plaintiff's wages with similar employees. The Full Commission further finds that under the exceptional circumstances of this case, it would be fair and just to the parties to use the fifth method under N.C. Gen. Stat. § 97-2(5) to determine Plaintiff's average weekly wage in order to most nearly approximate the amount which Plaintiff would have earned but for his October 15, 2007 work injury.
13. The Full Commission finds, based upon the greater weight of the evidence, that it is fair and just to the parties to compute Plaintiff's average weekly wage based upon what he would have earned from Defendant for his work at the 2007 North Carolina State Fair. Since there is no evidence of record showing the specific days that Captain Green scheduled Plaintiff to work at the 2007 North Carolina State fair, the Full Commission cannot determine whether Plaintiff would have worked all of the 36 scheduled hours over three shifts during a one-week period, or whether the time would have been spread over a period of more than seven days. It is clear from the evidence that Plaintiff did not work on the first two days of the 2007 North Carolina State Fair, so the time period that he could have worked three, twelve-hour shifts was eight days, and at least two of those days would have fallen in the same week. If Plaintiff worked all of his 36 hours in the same week, his weekly wage would have been $900.00, which yields a weekly compensation rate of $600.03. Based upon records of Plaintiff's work from the 2006 North Carolina State Fair, Plaintiff's two, twelve-hour shifts took place over more than seven days, but he worked the first two days of the fair.
14. The Full Commission finds that computing Plaintiff's average weekly wage based upon the number of days available for working during the 2007 North Carolina State Fair, rather than trying to determine if his wages would have fallen within a seven-day period, is fair and just to both parties. Thus, but for Plaintiff's October 15, 2007 work injury, he would have worked *Page 10 
the previously scheduled 36 hours during the period of the 2007 North Carolina State Fair, and would have earned $900.00, which averages out to $90.00 per day (when spread out over the 10 days of the fair), yielding an average weekly wage of $630.00 per week and a compensation rate of $420.30. This amount most nearly approximates the amount which Plaintiff would have earned, but for his October 15, 2007 work injury. Basing Plaintiff's average weekly wage on the time period in which he could have been scheduled to work provides a fairer result for law enforcement officers who, like Plaintiff, sign up to work special, law enforcement duties as a result of a course of dealing or a mutual understanding between law enforcement agencies which is not formalized and does not afford the protection of a mutual aid agreement pursuant to N.C. Gen. Stat. § 160A-288.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. N.C. Gen. Stat. § 97-2(5) sets forth in priority sequence the five methods by which a plaintiff's average weekly wage is to be calculated in workers' compensation matters, and the first listed method, which entails calculating the total wages of the plaintiff for the 52 weeks of employment preceding the work injury and dividing that sum by 52, is to be the primary method. N.C. Gen. Stat. § 97-2(5) (2009); McAninch v. Buncombe CitySchools, 347 N.C. 126, 489 S.E.2d 375 (1997); Bond v. FosterMasonry, Inc., 139 N.C. App. 123, 532 S.E.2d 583 (2000). It is the clear intention of the North Carolina Workers' Compensation Act to calculate an average weekly wage that is fair and just to both parties. Conyers v. New Hanover County Schools,188 N.C. App. 253, 654 S.E.2d 745 (2008). *Page 11 
2. The North Carolina Industrial Commission "always retains the right, however, to utilize the final method of calculating an employee's average weekly wage, which allows the use of whatever computation method would `most nearly approximate the amount which the injured employee would be earning were it not for the injury,' in extraordinary circumstances in which the use of the first four methods will produce an unfair result." Pope v. JohnsManville, ___ N.C. App. ___, ___ S.E.2d ___
(September 21, 2010, COA09-281-2),citing, N.C. Gen. Stat. § 97-2(5) (2009). Although it is impermissible to aggregate or combine wages from more than one employer, neither McAninch nor Barnhardt v. Yellow CabCo., limit "the evidence upon which the Commission is entitled to rely in attempting to `approximate the amount which the injured employee would be earning were it not for the injury' during its application of the fifth method . . ."Pope, ___ N.C. App. ___, ___ S.E.2d ___
(September 21, 2010, COA09-281-2),citing, N.C. Gen. Stat. § 97-2(5) (2009); McAninch,347 N.C. 126, 489 S.E.2d 375 (1997); Barnhardt v. Yellow CabCo., 266 N.C. 419, 146 S.E.2d 479 (1966).
3. In the case at bar, it would not be fair and just to the parties to use any of the first four methods under N.C. Gen. Stat. § 97-2(5) for the reasons set forth above. However, it would be fair and just to the parties to use the fifth method under N.C. Gen. Stat. § 97-2(5) in order to most nearly approximate the amount which Plaintiff would have earned but for his October 15, 2007 work injury. N.C. Gen. Stat. § 97-2(5) (2009).
4. Applying the fifth method under section 97-2(5) of the North Carolina General Statutes, but for Plaintiff's October 15, 2007 work injury, he would have worked 36 hours at the rate of $25.00 per hour during the period of the 2007 North Carolina State Fair. The Full Commission found as fact that computing Plaintiff's average weekly wage based upon the number of days available for working during the 2007 North Carolina State Fair, rather than *Page 12 
trying to determine if all of his wages would have fallen within a seven-day period, is fair and just to both parties. Therefore, Plaintiff's average weekly wage is $630.00, yielding a compensation rate of $420.30. N.C. Gen. Stat. § 97-2(5) (2009).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Plaintiff's average weekly wage is $630.00, yielding a compensation rate of $420.30 per week.
2. Subject to a reasonable attorney's fee herein approved, Defendant shall pay temporary total disability compensation to Plaintiff at the rate of $420.30 per week from October 16, 2007 through January 14, 2008, or until Plaintiff returned to work at his regular position at the Wake County Sheriff's Office. The accrued compensation shall be paid to Plaintiff in a lump sum after credit is given to Defendant for compensation already paid.
3. Subject to a reasonable attorney's fee herein approved, Defendant shall pay permanent partial disability compensation to Plaintiff at the rate of $420.30 per week for 20 weeks for the 10 percent permanent partial disability rating (per the parties' stipulation) to his left hand. The accrued compensation shall be paid in a lump sum.
4. A reasonable attorney's fee of 25 percent of the compensation due Plaintiff under paragraphs two and three above is approved for Plaintiff's counsel. Defendant shall deduct and pay directly to Plaintiff's counsel 25 percent of the compensation owed to Plaintiff.
5. Defendant shall pay the costs of these proceedings.
This the __ day of September 2010. *Page 13 
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1